IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| **DUNKIN' DONUTS FRANCHISING LLC,**<br>    a Delaware Limited Liability Company,<br>**DD IP HOLDER LLC,**<br>    a Delaware Limited Liability<br>**BASKIN-ROBBINS FRANCHISING LLC,**<br>    a Delaware Limited Liability Company,<br>**BR IP HOLDER LLC,**<br>    a Delaware Limited Liability Company,<br>    and<br>**DB REAL ESTATE ASSETS I LLC,**<br>    a Delaware Limited Liability Company, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| **Plaintiffs,** | ) | **Case No.:      4:11-cv-01484-AGF** |
| | ) | |
| **v.** | ) | **JURY TRIAL REQUESTED** |
| | ) | |
| **SAI FOOD & HOSPITALITY, LLC,**<br>    a Missouri Limited Liability Company,<br>**JAYANT PATEL,**<br>    a resident of Missouri,<br>**ULKA PATEL,**<br>    a resident of Missouri, and<br>**KAMLESH PATEL,**<br>    a resident of New Jersey | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| **Defendants.** | ) | |

## DEFENDANTS' ANSWER TO THE FIRST AMENDED COMPLAINT AND COUNTERCLAIM FOR DECLARATORY RELIEF

COME NOW Defendants, Sai Food & Hospitality, LLC, Jayant Patel, Ulka Patel, and Kamlesh Patel, hereinafter sometimes "Defendants", by and through undersigned counsel, and for their answer to Plaintiffs' First Amended Complaint, hereinafter sometimes "the amended complaint" state that Defendants,

### Parties

1.      <u>admit</u> the allegations contained in paragraph 1 in the amended complaint.

2.      <u>admit</u> the allegations contained in paragraph 2 of the amended complaint.

1

3.      <u>admit</u> the allegations contained in paragraph 3 of the amended complaint.

4.      <u>admit</u> the allegations contained in paragraph 4 of the amended complaint.

5.      <u>admit</u> the allegations contained in paragraph 5 of the amended complaint.

6.      <u>admit</u> the allegations contained in paragraph 6 of the amended complaint.

7.      <u>state</u> they are without sufficient information to admit or to deny the averments in paragraph 7 of the amended complaint and consequently deny the same and demand strict proof of the membership and corporate structure referred in this paragraph.

8.      <u>admit</u> the allegations contained in paragraph 8 of the amended complaint.

9.      <u>admit</u> the allegations contained in paragraph 9 of the amended complaint.

10.      <u>admit</u> that Jayant Patel is a citizen and resident of the State of Missouri and also admit that he signed Franchise Agreements, on November 19, 2010, and August 5, 2011 and refer the court and the parties to these agreements in their entirety for their terms and conditions; except as admitted herein, all other averments in paragraph 10 of the amended complaint are denied.

11.      <u>admit</u> that Ulka Patel is a citizen and resident of the State of Missouri and also admit that she signed franchise agreements, dated November 19, 2010, and August 5, 2011, and refer the court and the parties to these agreements in their entirety for their respective terms and conditions; except as admitted herein, all other averments in paragraph 11 of the amended complaint are denied.

12.      <u>admit</u> that Kamlesh Patel is a citizen and resident of the State of New Jersey and also admit that he signed a franchise agreement, dated August 5, 2011, and refer the court and the parties to this agreement in its entirety for its terms and conditions; except as admitted herein, all other averments in paragraph 12 are denied.

2

## Jurisdiction And Venue

13.  <u>state</u> that this court may not have jurisdiction to resolve this case on the basis of diversity of citizenship because one or more of the members of one or more of the limited liability company Plaintiffs is or may be a resident of Missouri or New Jersey.

14.  <u>admit</u> that the franchises are operated in this district; except as admitted herein, all other averments in paragraph 14 of the amended complaint are denied.

15.  <u>admit</u> that venue may properly be before the court for the reasons stated herein; except as admitted herein, all other averments in paragraph 15 are denied.

### The Dunkin' Donuts System

16.  <u>admit</u> the allegations contained in paragraph 16 of the amended complaint.

17.  <u>admit</u> the allegations contained in paragraph 17 of the amended complaint.

18.  <u>admit</u> the allegations contained in paragraph 18 of the amended complaint.

19.  <u>admit</u> the allegations contained in paragraph 19 of the amended complaint.

20.  <u>admit</u> the allegations contained in paragraph 20 of the amended complaint.

21.  <u>admit</u> the allegations contained in paragraph 21 of the amended complaint.

22.  <u>admit</u> the averments in paragraph 22 of the amended complaint

### The Baskin-Robbins System

23.  <u>admit</u> the allegations contained in paragraph 23 of the amended complaint.

24.  <u>admit</u> the allegations contained in paragraph 24 of the amended complaint.

25.  <u>admit</u> the allegations contained in paragraph 25 of the amended complaint.

26.  <u>admit</u> the allegations contained in paragraph 26 of the amended complaint.

27.  <u>admit</u> the allegations contained in paragraph 27 of the amended complaint.

28.  admit the allegations contained in paragraph 28 of the amended complaint.

29.    <u>admit</u> the allegations contained in paragraph 29 of the amended complaint.

## Defendants' Obligations Under the Franchise Agreements

30.    <u>admit</u> that the franchise agreements license the use of trademarks, trade names, and trade dress in accordance with the terms of the agreements; except as admitted herein, all other averments in paragraph 30 of the amended complaint are denied.

31.    <u>admit</u> that the franchise agreements license the use of proprietary marks, including their trademarks, logos, emblems, trade dress and other indication of origin, only "in the manner that [Dunkin' Donuts and Baskin-Robins] approve"; except as admitted herein, all other averments in paragraph 31 of the amended complaint are denied.

32.    <u>state</u> that the franchise agreements were not attached to the amended complaint and direct the court and the parties to the agreements in their entirety for their terms; except as stated herein, all other averments in paragraph 32 are denied.

33.    <u>state</u> that the franchise agreements were not attached to the amended complaint and direct the court and the parties to the agreements in their entirety for their terms and conditions; except as stated herein all other averments in paragraph 33 of the amended complaint are denied;

34.    <u>state</u> and refer the court and the parties to the franchise agreements in their entirety for their terms and conditions; except as stated herein, all other averments in paragraph 34 of the amended complaint are denied.

35.    <u>state</u> and refer the court and the parties to the franchise agreements for their terms and conditions; except as stated herein, all other averments in paragraph 35 are denied.

36.    <u>state</u> and refer the court to the franchise agreements in their entirety for their terms and conditions; except as stated herein, all other averments in paragraph 36 of the

4

amended complaint are denied.

37.    state and refer the court to the franchise agreements in their entirety for their terms and conditions; except as stated herein, all other averments in paragraph 37 of the amended complaint are denied.

## The Sublease and Lease Option Agreement

38.    admit there is a Sublease for the Washington Shop; except as stated herein, all other averments in paragraph 38 of the amended complaint are denied.

39.    admit there is a sublease and refer the court and the parties to its terms and conditions; except as admitted herein, all other averments in paragraph 39 of the amended complaint are denied.

40.    admit there is an Option to Assume Lease and direct the court and the parties to this agreement for its terms and conditions; except as admitted herein, all other averments in paragraph 40 of the amended complaint are denied.

41.    direct the court and the parties to the Option to Assume Lease for its terms and conditions; except as stated herein, all other averments in paragraph 41 of the amended complaint are denied.

## The Store Development Agreement

42.    admit that Jayant Patel and his wife, Ulka Patel, signed a Multiple Unit Store Development Agreement ("SDA") and direct the court and the parties to the agreement in its entirety for its terms and conditions; except as stated herein, all other averments in paragraph 42 of the amended complaint are denied.

5

43.     <u>state</u> and direct the court and the parties to the Multiple Unit Store Development Agreement ("SDA") for its terms and conditions; except as stated herein, all other averments of Paragraph 43 are denied.

44.     <u>deny</u> that there has been a breach of the Franchise Agreements and/or the Multiple Unit Store Development Agreement ("SDA"); except as stated herein, all other averments in paragraph 44 of the amended complaint are denied.

### Defendants' Defaults

45.     <u>admit</u> that on or about November 19, 2010, in connection with the signing of the Washington Franchise Agreement, Jayant Patel and Ulka Patel signed and submitted a Certificate of Authority and Incumbency; except as admitted herein, all other averments in paragraph 45 of the amended complaint are denied.

46.     <u>state</u> direct the court and the parties to the Certificate of Authority and Incumbency for its terms and conditions; except as stated herein, all other averments in paragraph 46 are denied.

47.     <u>state</u> and direct the court and the parties to the Certificate of Authority and Incumbency for its terms and conditions; except as stated herein, all other averments in paragraph 47 are denied.

48.     <u>admit</u> that the ownership interests of Sai Food & Hospitality, LLC, hereafter sometimes, "SFH", changed from time to time, at the direction of Plaintiffs and their agents and representatives, and that such ownership changes were made known to Plaintiffs agents and representatives; except as stated herein, all other averments in paragraph 48 of the amended complaint are denied.

6

49.     <u>admit</u> that Plaintiffs, from time to time, directed changes in ownership interests of SH, including the removal of Kamlesh Patel and Jigar Patel as owners of Sai Food & Hospitality; except as stated herein, all other averments in paragraph 49 of the amended complaint are denied.

50.     admit that corporate minutes were requested and further state that they were produced; except as stated herein, all other averments in paragraph 50 of the amended complaint are denied.

51.     <u>admit</u> that IRS Form 2553 (Election for a Small Business Corporation) was requested and was provided; except as stated herein, all other averments in paragraph 51 of the amended complaint are denied.

52.     <u>deny</u> the averments in paragraph 52 of the amended complaint.

53.     <u>admit</u> that Form 2553, dated October 15, 2010 was submitted to Plaintiffs and filed with IRS and direct the Court and the parties to the form for its terms and conditions; except as stated herein, all other averments in paragraph 53 of the amended complaint are denied.

54.     <u>deny</u> the averments in paragraph 54 of the amended complaint.

55.     <u>deny</u> the averments in paragraph 55 of the amended complaint and specifically deny that the Form 2553 was prepared, filed and submitted with the intent to withhold information concerning the ownership of SFH.

56.     <u>admit</u> that, on or about November 19, 2010, Jayant Patel and Ulka Patel, his wife, signed the Washington Franchise Agreement; except as stated herein, all other averments in paragraph 56 of the amended complaint are denied.

57.     <u>deny</u> the averments in paragraph 57 of the amended complaint.

7

58.     admit that SFH filed its tax return and Schedules K-1 on or about March 6, 2011 and direct the Court and the parties to the Schedule K-1 for its terms and provisions; except as stated herein, all other averments in paragraph 58 of the amended complaint are denied.

59.     admit the averments in paragraph 59 of the amended complaint and direct the Court and the parties to the letters for its terms and conditions; except as stated herein, all other averments in paragraph 59 of the amended complaint are denied.

60.     admit the averments in paragraph 60 of the amended complaint.

61.     admit that on or about June 1, 2011 documents were signed changing the ownership interests of SFH with the consent, knowledge and at the direction of Plaintiffs; except as stated herein, all other averments in paragraph 61 of the amended complaint are denied.

62.     admit that, on or about August 4, 2011, a document entitled "Addition of Interest" was submitted to and accepted by Plaintiffs; except as stated herein, all other averments in paragraph 62 of the amended complaint are denied.

63.     state and direct the court and the parties to the Addition of Interest document for its terms and conditions; except as stated herein, all other averments in paragraph 63 of the amended complaint are denied.

64.     deny the averments in paragraph 64 of the amended complaint.

65.     admit that Kamlesh Patel has, from time to time, had a financial interest in SFH; except as stated herein, all other averments in paragraph 65 of the amended complaint are denied.

66.     state that they are without sufficient information to admit or deny the averments in paragraph 66 and consequently deny the same.

67.     deny the allegations of paragraph 67 of the amended complaint.

8

68.    <u>deny</u> the allegations of paragraph 68, of the amended complaint.

69.    <u>deny</u> the allegations of paragraph 69 of the amended complaint.

70.    <u>deny</u> the allegations in paragraph 70 of the amended complaint.

71.    <u>admit</u> that a notice of Default and Termination was sent on or about August 24,

2011 and direct the Court and the parties to its terms and conditions; except as stated herein, all

other averments in paragraph 71 of the amended complaint are denied.

**COUNT I**
**(Breach of Contact – Franchise Agreements as to**
**all Defendants)**

72.    <u>reallege</u> and incorporate herein by reference their answers to paragraphs 1 through

71, above, as their answers to paragraph 72 of the amended complaint.

73.    <u>deny</u> the allegations of paragraph 73 of the amended complaint.

74.    <u>deny</u> the allegations of Paragraph 74 of the amended complaint.

75.    <u>deny</u> the allegations of Paragraph 75 of the amended complaint.

**COUNT II**
**(Breach of Contract – Sublease as to all Defendants)**

76.    <u>reallege</u> and incorporate herein by reference their answers to paragraphs 1 through

75 of the amended complaint, above, their answers to paragraph 76 of the amended complaint.

77.    <u>deny</u> the allegations of paragraph 77 of the amended complaint.

78.    <u>deny</u> the allegations of paragraph 78 of the amended complaint.

79.    <u>deny</u> the allegations of Paragraph 79 of the amended complaint.

**COUNT III**
**(Breach of Contract – SDA as to Defendants Jayant Patel and Ulka Patel)**

80.    <u>reallege</u> and incorporate herein by reference their answers to paragraphs 1 through

79, above, as their answers to paragraph 80 of the amended complaint.

81.    <u>deny</u> the allegations of paragraph 81 of the amended complaint.

82.     <u>deny</u> the allegations of paragraph 82 of the amended complaint.

83.     <u>deny</u> the allegations of paragraph 83 of the amended complaint.

## COUNT IV
### (Trademark Infringement as to all Defendants)

84.     <u>reallege</u> and incorporate herein by reference their answers to paragraphs 1 through 83, above, as their answers to paragraph 84 of the amended complaint.

85.     <u>deny</u> the allegations of paragraph 85 of the amended complaint.

86.     <u>deny</u> the allegations of paragraph 86 of the amended complaint.

87.     <u>deny</u> the allegations of paragraph 87 of the amended complaint.

## COUNT V
### (Unfair Competition as to all Defendants)

88.     <u>reallege</u> and incorporate herein by reference their answers to paragraphs 1 through 87, above, as their answer to paragraph 88 of the amended complaint.

89.     <u>deny</u> the allegations of paragraph 89 of the amended complaint.

90.     <u>deny</u> the allegations of paragraph 90 of the amended complaint.

91.     <u>deny</u> the allegations of paragraph 91 of the amended complaint.

## COUNT VI
### (Trade Dress Infringement as to all Defendants)

92.     <u>reallege</u> and incorporate herein by reference their answers to paragraphs 1 through 91, above, as their answers to paragraph 92 of the amended complaint.

93.     <u>deny</u> the allegations of paragraph 93 of the amended complaint.

94.     <u>deny</u> the allegations of paragraph 94 of the amended complaint.

95.     <u>deny</u> the allegations of paragraph 95 of the amended complaint.

96.     <u>deny</u> the allegations of Paragraph 96 of the amended complaint.

## Affirmative Defenses

For their Affirmative Defenses to Counts I-V of the amended complaint, Defendants state that:

97.     The amended complaint fail to state claims upon which relief can be granted.

98.     More specifically, the amended complaint is defective and fails to state claims for relief because Plaintiffs fail to specifically allege (1) a representation or representations; (2) their falsity; (3) their materiality; (4) the Defendants' knowledge of the falsity; (5) the Defendants' intent that the representations should be acted upon by the Plaintiffs in the manner reasonably contemplated; (6) the Plaintiffs' ignorance of the falsity of the representations; (7) the Plaintiffs' reliance on the representations as being true; (8) their right to rely thereon; and (9) the Plaintiffs' consequent and proximately caused injury.

99.     Because Plaintiffs were aware of the ownership interests of the Defendants at the time the franchise agreements were signed, they either waived the conditions in the agreements and/or are estopped to assert them on the basis they were misled for any reason.

100.    Plaintiffs violated the provisions of § 407.140 R.S.Mo. by failing to give each Defendant 90 days prior written notice to cure any alleged breach of the franchise agreements and therefore the amended complaint should be dismissed.

101.    If any breach of the franchise agreements occurred which is specifically denied, Plaintiffs failed to provide Defendants with sufficient notice and opportunity to cure as required by the terms of the franchise agreements.

102.    Plaintiffs breached their contracts and the express and implied terms of the franchise agreements and sublease, as well as their obligations of good faith and fair dealing owed to Defendants.

11

103.    To the extent Plaintiffs may be awarded any damages, Defendants are entitled to claims of set-off for the amounts paid by or invested by them of more than $1.7 million.

104.    Defendants are using the Dunkin' Donuts marks under license or with permission from Dunkin' Donuts, Inc.

105.    Defendants are using the Baskin-Robbins marks under license or with permission from Plaintiff Baskin-Robbins, Inc.

WHEREFORE, Defendants pray that this Court:

a.    declare that their conduct did not violate the terms of the franchise agreements, sublease, and SDA, or constitute grounds for terminating the franchise agreements, sublease and SDA;

b.    enjoin and prohibit the termination of the franchise agreements, sublease, and SDA;

c.    enjoin Plaintiffs, and all those acting in concert with them, from infringing upon Defendants right to use Dunkin's and Baskin-Robbins' trademarks, trade dress, and trade names and from otherwise engaging in competition as franchises;

d.    directing Plaintiffs to comply with their obligations under their contracts with Defendants, including but not limited to the franchise agreements, sublease, option to assume lease, and the SDA, and prohibit them from taking any steps to transfer their leasehold interests in the franchise to Plaintiffs or their designee(s);

e.    award Defendants damages for the wrongful termination of the franchise agreements and for their damages for lost profits as a result of such wrongful termination;

f.    deny any relief requested under § 35 of the Lanham Act, 15 U.S.C. § 1117;

g.    award Defendants prejudgment interest in accordance with § 35 of the Lanham

Act, 15 U.S.C. § 1117;

h.    award Defendants their costs and attorneys' fees incurred in connection with this

action pursuant to contract and § 35 of the Lanham Act, 15 U.S.C. § 1117; and

i.    award Defendants such other relief as this Court may deem just and proper.

### COUNTERCLAIM FOR DECLARATORY RELIEF

COME NOW Counterclaim Plaintiffs, Sai Food & Hospitality, LLC, Jayant Patel, Ulka

Patel and Kamlesh Patel, and for their Counterclaim for relief against Counterclaim Defendants,

state as follows:

### Parties

1.    Counterclaim Plaintiff, Sai Food & Hospitality, LLC, hereafter sometimes "SFH",

is a Missouri limited liability company with its principal place of business located in St. Louis

County, Missouri.

2.    Counterclaim-Plaintiff, Jayant Patel, is a natural person and a citizen and resident

of the State of Missouri; he is an officer, member, and/or shareholder of SFH.

3.    Counterclaim-Plaintiff, Ulka Patel, is a natural person and a citizen and resident

of the State of Missouri; she is an officer, member and/or shareholder of SFH.

4.    Counterclaim-Plaintiff, Kamlesh Patel, is a natural person and a citizen and

resident of the State of New Jersey; he is an officer, member, and/or shareholder of SFH.

5.    Counterclaim-Defendant, Dunkin' Donuts Franchising LLC, hereafter sometimes,

"Dunkin' Donuts", is a Delaware limited liability company with its principal place of business at

130 Royall Street, Canton, Massachusetts; it is engaged in the business of franchising

independent businesspersons to operate "Dunkin' Donuts" shops throughout the United States.

13

6.      Counterclaim-Defendant, DD IP Holder LLC, successor-in-interest to Dunkin' Donuts USA, Inc., is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts; DD IP Holder LLC is the owner of the trademark, service mark, and trade name "Dunkin' Donuts," and related marks.

7.      Counterclaim-Defendant, Baskin-Robbins Franchising LLC, is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts; it is engaged in the business of franchising independent businesspersons to operate Baskin-Robbins stores throughout the United States.

8.      Counterclaim-Defendant, BR IP Holder LLC, successor-in-interest to Baskin-Robbins Incorporated, is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts; BR IP Holder LLC is the owner of the trademark, service mark, and trade name "Baskin-Robbins," and related marks.

9.      Counterclaim-Defendant, DB Real Estate Assets I LLC, a successor-in-interest to Third Dunkin' Donuts Realty, Inc., is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts; it is engaged in the business of leasing properties to Dunkin' Donuts franchisees to enable Dunkin' Donuts to franchise independent businesspersons to operate Dunkin' Donuts shops at those locations.

## Jurisdiction And Venue

10.      This is an action for declaratory judgment pursuant to Title 28, United States Code § 2201, for the purpose of determining an actual controversy between the parties as hereinafter more fully appears.

11.      Jurisdiction of this action is based upon Title 28, United States Code § 1332(a) based upon the assumption that none of the member/managers of the limited liability company

14

defendants are citizens of the States of Missouri and New Jersey and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

12.     This Court has in personam jurisdiction over Counterclaim Defendants because they conduct business n this district and/or the events giving rise to these claims occurred in this district.

13.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## The Franchise Negotiations and Agreements

14.     On or about May 29, 2008, as a condition for obtaining a franchise, Jayant Patel, Jigar Patel, and Kamlesh Patel applied for a Store Development Agreement ("the SDA") in the St. Louis County metropolitan area.

15.     At the time of the SDA application, Jayant Patel, Jigar Patel and Kamlesh Patel disclosed that they were partners in a company to be formed for purpose of acquiring a franchise from Dunkin' Donuts Franchising, LLC, hereafter sometimes "Dunkin' Donuts".

16.     On or about February 1, 2009, Dunkin' Donuts representative, Reggie Wright, Territory Development Manager,  informed the applicants, Jayant Patel, Kamlesh Patel, and Jigar Patel, that the SDA must be in their individual names; but, when they were ready to open the store, they could form the company with Jayant Patel, Jigar Patel and Kamlesh Patel as partners or owners.

17.     On or about February 5, 2009, Jayant Patel and Ulka Patel, his wife, signed the SDA contract with Dunkin' Donuts for the Washington and Florissant stores.

18.     Along with the SDA contract, Jayant and Ulka Patel and Kamlesh Patel were required to fill out a Franchisee's Request for Franchise Agreement that was required for each shop developed under that SDA.

19.     Kamlesh Patel and Jigar Patel, along with Jayant Patel, filled out and signed their franchisee application on May 29, 2008.

20.     Under the terms of the SDA, Jayant Patel and his wife, Ulka Patel, for an initial franchise fee payment of $133,330 which was paid upon execution of the SDA, they agreed to open a new Dunkin' Donuts unit within the given territory on or before January 15, 2011.

21.     Following a year of preparation under the Phase I Development Program set forth in the SDA, Dunkin' Donuts adopted a new formula for the franchise agreement but did not change the development timetable set forth in the SDA which change was subsequently confirmed in Amendment #2 to the SDA.

22.     According to the new Development Program, the SDA could not sustain the number of stores contemplated for the area based upon population and income for the area, but Dunkin' Donuts insisted that the same number of stores be developed.

23.     Jeff Zaverol of Dunkin' Donuts advised the applicants that Dunkin' Donuts was not going to refund any of SDA advance money but would make adjustments to the SDA contract for payment terms.

24.     Having paid the $133,330.00 SDA application fee to Dunkin' Donuts, Jayant Patel and Ulka Patel signed the new SDA and amendments to the SDA.

25.     On or about February 11, 2009, Dunkin' Donuts' agent and representative, Holly Van Nest, the Contract Administrator, sent Jayant and Ulka Patel the SDA and a copy of a Franchisee's Request for Franchise Agreement.

26.     On or about June 1, 2010, Dunkin' Donuts offered Jayant Patel and Ulka Patel, his wife, the opportunity to open a Dunkin' Donuts/Baskin-Robbins franchise express inside a Wal-Mart store at 1701 A Roy Drive, Washington, Missouri ("the Washington store"), and

directed them partners to email a new company structure and operating agreement for this franchise.

       27.     On or about June 14, 2010, Jayant Patel and Ulka Patel submitted a site approval document for a Dunkin' Donut unit at 8471 North Lindbergh in Florissant, Missouri ("the Florissant store").

       28.     On July 31, 2010, Sai Food & Hospitality, LLC, hereafter, sometimes "SFH", was issued a Certificate of Organization by the Secretary of State of the State of Missouri and commenced doing business with ownership percentages as follows:  Jayant S. Patel and Ulkaben Patel Irrevocable Trust, 30%; Jigar Patel, 30%; and Kamlesh Patel, 40%.

       29.     On or about July 31, 2010, Jayant S. Patel and Ulkaben Patel Irrevocable Trust, Jigar Patel and Kamlesh Patel each invested, according to their respective percentages as stated in the Operating Agreement of SHF.

       30.     Thereafter, Jayant S. Patel and Ulkaben Patel Irrevocable Trust, Jigar Patel and Kamlesh Patel each invested and spent money for and on behalf of SFH based upon their shares in the firm, which included expenses for the architect, General Contract and travel, among other payments and expenses.

       31.     On or about July 31, 2010, IRS Form 2553, Election by a Small Business Corporation, was sent by SFH to the Internal Revenue Service ("IRS") and a copy sent to Dunkin' Donuts disclosing the financial investment of the applicants, namely, Jayant S. Patel and Ulkaben Patel Irrevocable Trust, 30%; Jigar Patel, 30%; and Kamlesh Patel, 40%.

       32.     Following the receipt of IRS Form 2553 by Dunkin' Donuts, the applicants were told by Dunkin' Donuts that the franchise would be approved initially for Jayant and Ulka Patel, which required amendments to the corporate documents.

33.     On or about October 15, 2010, a draft of a revised IRS Form 2553 for SFH showing Jayant and Ulka having 51%; Jigar having 9%; and Kamlesh having 40% was rejected by the contract coordinator for the Plaintiffs, namely Angie Skafidas.  This draft was not filed with IRS.

34.     Thereafter, on October 15, 2010, at a meeting of the members of SFH, the ownership percentages were revised by the agreement of all of the members as follows:  Jayant Patel, 50% and Ulka Patel, 50% and a revised IRS Form 2553 was prepared to reflect the new percentages of ownership and forwarded to Dunkin' Donuts and approved by Angie Skafidas; this revised Form 2553 was also filed with IRS.

35.     On or about August 26, 2010, Dunkin' Donuts approved the proposed site location for the Dunkin' Donuts franchise at 8471 North Lindbergh, Florissant, Missouri ("the Florissant store").

36.     On or about September 1, 2010, Dunkin' Donuts directed Jayant Patel to amend the Operating Agreement to limit the corporate entity to the development, ownership and operation of Dunkin' Donuts and/or Baskin-Robbins franchises only, and this was accomplished by an amended Operating Agreement dated September 1, 2010.

37.     On or about September 30, 2010, Jayant Patel requested permission to add two minority franchise partners, i.e. Jigar Patel and Kamlesh Patel, under the terms of the Sai Food & Hospitality, LLC Operating Agreement.

38.     Because Dunkin' Donuts was trying to meet a deadline to open the Wal-Mart store by Thanksgiving of 2010 and construction was still under way, Dunkin' Donuts representatives Reggie Wright, Territory Development Manager and Angie Skafidas, the

Contract Coordinator, informed Jayant Patel that it did not have time to approve the new partners because the approval process could take from one to two months.

39.     Because it did not want to hold up the opening of the Dunkin' Donuts/Baskin-Robbins franchise in the Wal-Mart store, Dunkin' Donuts prepared a franchise agreement with Jayant Patel and Ulka Patel, his wife, only because these two individuals were the only individuals shown on the SDA.

40.     On October 15, 2010, at the direction and with the knowledge of Dunkin' Donuts, the members of SFH changed the share ownership interests in Sai Food & Hospitality, LLC from Jayant S. Patel and Ulkaben Patel Irrevocable Trust, Jigar Patel and Kamlesh Patel to Jayant S. Patel and Ulka Patel as the sole owners.

41.     On or about October 22, 2010, SFH and Jayant and Ulka Patel signed a Satellite Development Program with Dunkin' Donuts and Baskin-Robbins for a franchise at 1701 A Roy Drive, Washington, Missouri (Wal-Mart Store #172), and paid Dunkin' Donuts an initial franchise fee of $22,500 and a total amount of $224,500 for this franchise.

42.     On November 19, 2010, Jayant S. Patel and Ulka Patel, his wife, signed the franchise agreement for the Washington franchise unit at 1701 A Roy Drive.

43.     At the time Dunkin' Donuts signed the agreement, it also agreed to consider for approval additional partners for the next store franchise agreement.

44.     On or about December 6, 2010, the Washington franchise unit opened at 1701 A Roy Drive, Washington, Missouri.

45.     On or about January 1, 2011, Jayant Patel informed Dunkin' Donuts that he had finally negotiated a lease for 8471 North Lindbergh in Florissant.

19

46.     Jayant Patel then asked Dunkin' Donuts for permission to use the same corporation for the upcoming store #349301 in Florissant, Missouri.

47.     On February 15, 2011, Angie Skafidas of Dunkin' Donuts, confirmed the request to use the existing corporation and did not require any additional information because Dunkin' Donuts had all the information from the previous franchise agreement.

48.     On or about March 28, 2011, Jayant Patel submitted an executed lease for 8471 North Lindbergh (the Florissant store) to Jeff Savorla of Dunkin' Donuts for review.

49.     The lease was sent for review on March 28, 2011, and approved by Dunkin' Donuts with the members of SFH, Jayant Patel, Ulka Patel, Jigar Patel, and Kamlesh Patel, with an option to assume the lease by Dunkin' Donuts representatives.

50.     The lease was drafted according to the original Operating Agreement and included Jigar Patel, Kamlesh and Jayant S. Patel and the Ulkaben S. Patel Irrevocable Trust.

51.     Subsequently, the lease was signed on or about April 1, 2011, and the option to assume on June 16, 2011 by Dunkin' Donuts.

52.     On March 30, 2011, Angie Skafidas requested the franchise check list for the Florissant store and mentioned the approval status of Jigar Patel and Kamlesh Patel as additional franchisees.

53.     On or about April 12, 2011, Kamlesh Patel received a letter from Dunkin' Donuts representative Reggie White confirming him as a 40% minority partner to the Franchise Agreement for the Washington store franchise.

54.     On or about April 20, 2011, Angie Skafidas sent an email concerning changes, and, at the request of Dunkin' Donuts, she approved Kamlesh Patel as a minority partner; and she also advised that Jigar Patel's application remained pending.

55.     In her email, Angie Skafidas suggested that stakeholder information and the Operating Agreement be amended.

56.     On or about May 24, 2011, Jayant Patel received a request for information from Jessica Thomas of Dunkin' Donuts' Loss Prevention Department.

57.     Jayant Patel immediately submitted the documents requested and then received another request for missing documents on May 31, 2011, via email.

58.     Thereafter, Jayant Patel submitted the requested documents within the time requested.

59.     On or about May 26, 2011, Jayant Patel asked Angie Skafidas to determine the status of approval for the addition of Jigar Patel as an additional franchisee.

60.     On or about June 7, 2011, Angie Skafidas requested changes in the original Operating Agreement.

61.     The original Operating Agreement as previously amended on September 1, 2010 further amended on October 15, 2010, was submitted to Dunkin' Donuts.

62.     At the direction of Angie Skafidas and Holly Van Nest, changes were made to the shareholders' structure of the original Operating Agreement and sent to Ms. Skafidas on June 8, 2011, and SFH amended the shareholding so that Jayant Patel had 30%; Ulka Patel had 30%; and Kamlesh Patel had 40%.

63.     Jayant Patel spoke to Angie Skafidas and confirmed that the changes were correct and that no other changes were required.

64.     Based upon their conversation with Angie Skafidas, Jayant Patel wrote a Board Minute and made the suggested changes that state the following ownership interests:  Jayant S.

Patel and Ulkaben Patel Irrevocable Trust (30%) to Jayant Patel, Jigar Patel (30%) to Ulka Patel, and Kamlesh Patel (40%).

65. On or about June 1, 2011, Jigar Patel received a letter from Dunkin' Donuts indicating that it would not approve him as an additional franchisee.

66. On or about June 8, 2011, Jayant Patel was directed to continue to work within the framework of the franchise agreement and was requested to sign an FDD for Jayant Patel, Ulka Patel and Kamlesh Patel.

67. On or June 10, 2011, Jigar Patel called Dunkin' Donuts and was told that, because he was a defendant in a federal case, he would not be accepted as an additional franchisee.

68. On or about July 1, 2011, Jayant Patel was told that a second franchise agreement would be granted in addition the Washington franchise.

69. On or about July 1, 2011, a meeting took place with Patrick Maloney, the investigator for Loss Prevention for Dunkin' Donuts, at the Washington franchise.

70. At this meeting Jayant Patel answered questions and explained the tax return which reflected the ownership of the company and the interests of Jayant Patel, Jigar Patel, and Kamlesh Patel.

71. At this meeting, Patrick Maloney said he was investigating and would call back if he needed more information.

72. Dunkin' Donuts then asked for an additional $1,000.00 to add a minority partner (Kamlesh Patel) for Sai Food & Hospitality, LLC which payment was immediately paid.

73. On or about July 18, 2011, Sai Food & Hospitality, LLC paid the additional franchise fee.

74.     On or about August 5, 2011, Dunkin' Donuts granted a franchise to SFH, Ulka Patel, Jayant Patel and Kamlesh Patel for a franchise at 8471A N. Lindbergh, Florissant, Missouri, the Florissant Franchise, with an investment cost to the partners of $590,078.22 including the cost of training of managers, shift leaders and crew members of 45 employees for 15 days and baking a large number of products required by Dunkin' Donuts.

75.     On or about August 10, 2011, a forfeiture action was filed in the United States District Court which named, among others, Jigar Patel as a defendant.

76.     On or about August 24, 2011, Patrick Maloney of Dunkin' Donuts' Loss Prevention Department called Jayant Patel advising him that Dunkin' Donuts was terminating the SDA and the franchise agreements and that Jayant would receive legal notice regarding such termination.

77.     On or about August 24, 2011, a Notice of Default and Termination was sent to Sai Food & Hospitality, LLC, Jayant Patel, Ulka Patel and Kamlesh Patel.

78.     Defendants/Counterclaim-Plaintiffs have performed all duties and obligations under the Franchise Agreements and Plaintiffs/Counterclaim-Defendants have no factual or legal basis for the termination of the contracts.

79.     Plaintiffs/Counterclaim-Defendants do not have an adequate remedy at law.

80.     A case of actual controversy exists between Counterclaim-Plaintiffs and Counterclaim-Defendants pursuant to 28 U.S.C.A. § 2201.38, and Counterclaim-Plaintiffs seek a declaration of their rights and other legal obligations.

WHEREFORE, Counterclaim-Plaintiffs Sai Food & Hospitality, LLC, Jayant Patel, Ulka Patel and Kamlesh Patel, jointly and severally, pray that this Court:

a.     declare that the franchise agreements, sublease, and SDA remain in full force and effect;

b.     prohibit termination and/or interference with the franchise agreements, sublease, and SDA;

c.     prohibit Defendants, and all those acting in concert with them or for them, from infringing upon Counterclaim Plaintiffs' right to use Dunkin's and Baskin-Robbins' trademarks, trade dress, and trade names;

d.     affirmatively direct Defendants to comply with their contracts, including but not limited to, the franchise agreements, sublease, option to assume lease, and SDA and prohibiting them from taking any steps to transfer these interests to themselves or others;

e.     award damages for the wrongful termination of the franchise agreements, sublease, and SDA and for damages to their business relationships;

f.     award damages for lost profits as a result of this action;

g.     award prejudgment interest in accordance with § 35 of the Lanham Act, 15 U.S.C. § 1117;

h.     award attorneys' fees and costs incurred in connection with this action pursuant to contract and § 35 of the Lanham Act, 15 U.S.C. § 1117; and

i.     award such other relief as this Court may deem just and proper.

Respectfully submitted,

ANDERSON & GILBERT, L.C.


    /s/ Francis X. Duda
Francis X. Duda,        #20110MO
Fortis M. Lawder,       #14929MO
515 Olive Street, Suite 704
St. Louis, MO  63101
(314) 721-2777
(314) 721-3515 fax
fxduda@anderson-gilbert.com
fmlawder@anderson-gilbert.com


## CERTIFICATE OF SERVICE

I hereby certify that on December 5, 2011, the foregoing was served electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system.


    /s/ Francis X. Duda


25