UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DUNKIN' DONUTS FRANCHISING )
LLC; DD IP HOLDER LLC; BASKIN- )
ROBBINS FRANCHISING LLC; and BR )
IP HOLDER LLC, )
                                                      )
     Plaintiffs / Counterclaim Defendants, )
                                                      )
            vs. )                Case No. 4:11CV01484 AGF
                                                      )
SAI FOOD HOSPITALITY, LLC, )
JAYANT PATEL, and ULKA PATEL, )
                                                      )
     Defendants / Counterclaim Plaintiffs, )
                                                      )
DUNKIN' BRANDS GROUP INC. and )
DUNKIN' BRANDS INC., )
                                                      )
     Counterclaim Defendants. )

## MEMORANDUM AND ORDER

This case is before the Court on the motion (Doc. No. 98) filed by Plaintiffs / Counterclaim Defendants Dunkin' Donuts Franchising, LLC, et al. (referred to herein as "Plaintiffs")[1] to dismiss Counts V through IX of Defendants' nine-count third amended counterclaim. The Court heard oral argument on the motion on March 12, 2013. For the reasons set forth below, the motion to dismiss shall be granted with respect to Defendants'

---

[1] The Court granted Defendants leave to add Dunkin' Brands Group Inc. ("DBGI") and Dunkin' Brands Inc. ("DBI"), as Counterclaim Defendants. According to the third amended counterclaim, DBI is "the franchisor of the Dunkin' system," and DBGI is the parent corporation of DBI and two Plaintiffs. DBGI and DBI move to dismiss Counts VIII and IX, the only counts in which they are named.

antitrust counterclaims (Counts VIII and IX) and denied with respect to Defendants state tort law counterclaims.[2]

## BACKGROUND

For purposes of the motions before this Court, Plaintiffs are collectively the franchisor of the Dunkin' Donuts system,[3] which involves production, merchandising, and sale of donuts and other products using special equipment and management programs, and proprietary marks belonging to Plaintiffs. On February 5, 2009, Defendants Jayant Patel and his wife Ulka Patel signed a Store Development Agreement ("SDA") (Doc. No. 92-5), giving them the exclusive right and obligation to develop and open ten Dunkin' Donuts stores in the St. Louis, Missouri, area, pursuant to a specified schedule, with the last store to open in January 2017, and each store to have a 20 year franchise.

Under the SDA, Jayant Patel and Ulka Patel agreed to pay a nonrefundable initial franchise fee of $40,000 for each store, for a total of $400,000, of which $133,330 was to be paid upon execution of the SDA, and additional payments of that amount due 12 and 24 months thereafter. They also agreed to sign a franchise agreement prior to commencement of construction of each store. Each store was required to be constructed and equipped to Plaintiffs' standards and specifications. The SDA provided for a continuing franchise fee for each store, based upon a percentage of gross sales. Plaintiffs retained the right to pursue franchises in certain places in the area, such as airports, with

---

[2] Plaintiffs' separate motion (Doc. No. 91) for summary judgment on all counterclaims will be addressed by separate Memorandum and Order.

[3] The system includes the related Baskin Robbins brand.

Jayant Patel and Ulka Patel to be offered the first right of refusal as to those franchises. On June 30, 2010, the SDA was amended to adjust the store openings schedule and the dates for payment of the remaining $266,670 initial franchise fee. (Doc. No. 92-6.)

On July 31, 2010, Defendant Sai Food & Hospitality, LLC ("SFH") was formed with ownership percentages as follows: 30 percent, the Jayant S. Patel and Ulkaben Patel Irrevocable Trust; 40 percent, Kamlesh Patel; and 30 percent, Jigar Patel. The parties dispute what Plaintiffs knew about the ownership interests of Kamlesh and Jigar Patel, and whether they were authorized to be franchisees. On November 19, 2010, the SDA was amended to provide for nine rather than ten stores in the St. Louis store development area. Also on November 19, 2010, Plaintiffs entered into a franchise agreement with SFH as franchisee for a Dunkin' Donuts store in Washington, Missouri. The agreement was signed on behalf of SFH by Jayant Patel and Ulka Patel, as members.

As part of the process for securing the Washington store franchise, Jayant Patel and Ulka Patel submitted to Plaintiffs a Certificate of Authority and Incumbency that identified them as the owners of SFH, each owning a 50 percent share of the company; and a copy of an IRS Form 2553 (Election for a Small Business Corporation) for SFH on which was stated that they were the owners of the company, with each owning a 50 percent share. According to Defendants, when they signed the Washington store agreement, they paid Plaintiffs a franchise fee of $224,000, including $120,000 for equipment. The Washington store opened on December 6, 2010.

3

On April 1, 2011, a sublease agreement for property in Florissant, Missouri, for a Dunkin' Donuts store was entered into by Plaintiffs and SFH, with Ulka and Jayant Patel signing on SFH's behalf.  On July 18, 2011, Plaintiffs asked for and were paid $1,000 to add Kamlesh Patel as a franchisee.  On August 5, 2011, a franchise agreement for the Florissant store was signed by Plaintiffs and Jayant Patel, Ulka Patel, and Kamlesh Patel. Both franchise agreements provided that one of the conditions of default by the franchisee was the commission of a fraud or violation of a law relating to a business franchised by Plaintiffs, with no cure period for such a default.  (Doc. No. 92-3, ¶¶ 14.0.4, 14.2.)  The SDA and both franchise agreements contained an express mutual waiver of a jury trial, punitive damages, and lost profits, in the event of a dispute.  They also provided that Plaintiffs had "the right to specify all equipment to be used in connection with store operations" (Doc. 92-5 at 11), and that the agreements were to be interpreted in accordance with Massachusetts law.

Meanwhile, beginning in May 2011, Plaintiffs' Loss Prevention Department had been discussing with Defendants a civil lawsuit brought by the United States involving approximately $222,000 dollars in confiscated cash and cigarettes, in which Jayant Patel, Jigar Patel, and Sai Enterprises Limited (not SFH) were identified as parties with an interest in the confiscated property.[4]

On August 24, 2011 (three days before the opening of the Florissant store), Plaintiffs sent Defendants a Notice of Default and Termination, terminating the two franchise agreements, the sublease, and the SDA immediately upon Defendants' receipt of

---

[4]   The suit was filed on February 18, 2011.

the Notice.  (Doc. No. 92-35.)  The stated grounds for termination was fraud and violation of the law in falsely representing that only Jayant and Ulka Patel owned Sai when the two additional owners, Kamlesh Patel and Jigar Patel, together held the majority interest in the company; and making the same false statement to the government on the Form 2553.  The Notice demanded that Defendants immediately quit the premises subject to the sublease and deliver possession of the premises to Plaintiffs.  The Notice stated that if Defendants contested termination, Plaintiffs would pursue the matter in court, and that during the litigation, Plaintiffs would honor their contractual obligations, but that any further investment in the franchises, including the Florissant Shop which was scheduled to open (and subsequently did open) on August 29, 2011, was at Defendants' own risk.

Plaintiffs commenced the present action on August 25, 2011, asserting that had they been aware of the true ownership of SFH, they would not have entered into the Washington Franchise Agreement or approved Defendants to become franchisees for the Florissant store.  Plaintiffs claim that Defendants' conduct constituted a breach of the franchise agreements, breach of the sublease for the Florissant franchise, and breach of the SDA by Jayant and Ulka Patel (Counts I, II, and III, respectively).  Plaintiffs also assert claims for trademark infringement, trade dress infringement, and unfair competition (Counts IV, V, and VI respectively), due to Defendants' continued use of Plaintiffs' trademarks after Plaintiffs terminated the above-noted agreements.  For relief, Plaintiffs seek a declaration that they had a right to terminate the agreements in question, damages "in an amount as yet to be determined," statutory damages and attorney's fees, and injunctive relief directing

5

Defendants to, among other things, take all necessary steps to transfer their leasehold interests in the store(s) to Plaintiffs or their designee(s).

In their third amended counterclaim (Doc. No. 82 at 14-48), Defendants allege that changes to SFH's operating agreement and ownership interests were all made at the behest of, and with the knowledge and approval of, Plaintiffs. They allege that approximately one year after signing the SDA they were told that Plaintiffs would only approve store locations that met certain site and demographic requirements. They further allege that by August 5, 2011, they had invested approximately $590,000 (including the $40,000 initial franchise fee and approximately $175,000 for new equipment)[5] to open the Florissant store, and that contrary to the termination letter, they did not commit fraud, violate any laws, or engage in any deceptive practices in connection with their relationship with Plaintiffs.

In Counts I, II, III, and IV of their counterclaim, Defendants claim, respectively, wrongful termination of the franchise agreements under Missouri's Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. § 407.405, which requires 90-days' notice prior to termination; breach of the SDA by opening franchises in the airport without giving Jayant Patel and Ulka Patel the first right of refusal, and by changing the terms of the SDA so as to impose new requirements for store locations; breach of the Washington store franchise agreement; and breach of the Florissant store franchise agreement.

---

[5] It is not entirely clear whether the $175,000 was alleged to be part of, or in addition to, the $590,000.

Defendants also bring claims for promissory estoppel related to the Florissant store franchise agreement, asserting that Plaintiffs terminated that agreement without legal justification or notice and should be estopped from doing so, or alternatively, pay Defendants their resulting damages (Count V); willful termination -- prima facie tort related to the termination of the franchises (Count VI); and misrepresentations to Defendants to change SFH's business structure, upon which Defendants relied, resulting in the unlawful terminations (Count VII).   In addition, Defendants assert claims against Plaintiffs and against DBGI and DBI for violation of the Sherman Act and Clayton Act (Count VIII) and state anti-trust law (Count IX) due to unlawful tying of the sale of donut franchises / quick-serve donut-coffee restaurant franchises (the tying product) to the purchase of the equipment needed to operate the franchised stores.   With respect to the anti-trust counts, Defendants allege that Plaintiffs and DBGI and DBI exercised market control over the tying product.

As relief, Defendants seek "actual damages" in Counts I through IV (including recoupment of investment, lost profits, damage to business reputation); "damages" in Count V; "actual damages in tort" in Counts VI and VII; statutory damages trebled, including damages for lost profits in Count VIII; and statutory damages trebled in Count IX.

On June 1, 2012, Plaintiffs advised Defendants that they could terminate the Washington store franchise and Defendants did so on June 15, 2012.   Defendants are still operating the Florissant store.

7

## ARGUMENTS OF THE PARTIES

Plaintiffs argue that Counts V, VI, and VII should be dismissed because they simply "repackage" Defendants' contract claims as tort claims. More specifically, Plaintiffs argue that Defendants cannot recover on a promissory estoppel theory because a valid contract exists between the parties; Defendants cannot pursue a claim of prima facie tort because they have other adequate remedies available to them; and Defendants have failed to state a claim of misrepresentation because they have not alleged that they relied on false information from Plaintiffs.

For dismissal of Counts VIII and IX, Plaintiffs argue that "donut franchises" is not a viable market for purposes of establishing an illegal tying arrangement under the Sherman Act or state antitrust law, and that Defendants confuse their obligation to comply with their contractual obligations with the illegal exercise of market power by Plaintiffs. Plaintiffs maintain that the relevant section of the Clayton Act does not apply to franchises, and that DBGI and DBI were not parties to the contracts or negotiations at issue, and constitute separate legal entities from the franchisor of the Dunkin' system. Thus, according to Plaintiffs, Defendants have no basis to bring any claims against DBGI and DBI.

Defendants argue that the state law tort claims present alternative theories of liability fully supported by the alleged facts. They assert that following the signing of the Washington store franchise agreement, they invested over $500,000 to develop a new store location, reasonably believing, based upon representations by Plaintiffs, that they would be awarded a second franchise. They assert that DBGI and DBI were joined as Defendants to

8

ensure full and complete relief and that the extent to which DBGI and DBI control expansion of the Dunkin' Donuts franchise remains to be determined in discovery.

With respect to the antitrust counterclaims, Defendants argue that "donut franchises" is a relevant market for tying purposes, as there is no reasonably interchangeable substitute for a donut, and that they sufficiently pled that Plaintiffs (including DBGI and DBI) had the market power in this market to enable Plaintiffs to restrain trade in the related equipment market.

## DISCUSSION

To survive Plaintiffs' motion to dismiss, Defendants' counterclaim must contain sufficient factual matter, accepted as true, to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although a complaint or counterclaim need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster; in sum, this standard "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Id.* at 556.

**State Tort Counterclaims**

Whether Defendants have stated claims for promissory estoppel, willful termination, and/or misrepresentation is governed by Missouri law. *See Prudential Ins. Co. of Am. v. Kamrath*, 475 F.3d 920, 924 (8th Cir. 2007) (stating that a district court sitting

in diversity applies the law of the state in which it sits). The Court concludes that Defendants' counterclaim alleges sufficient facts as to the state tort counts to raise a right to relief above the speculative level. Plaintiffs' motion to dismiss challenges, to a large extent, the factual basis for Plaintiffs' claims. Such challenges are more appropriate in a motion for summary judgment. *See St. Louis Motorsports, LLC v. Ferrari N. Am., Inc.*, No. 4:11CV01346 RWS, 2012 WL 1745579, at *1 (E.D. Mo. May 16, 2012) (denying a motion to dismiss the plaintiffs' claims for promissory estoppel, unjust enrichment/recoupment, and misrepresentation that the plaintiffs asserted in addition to breach of contract, where the plaintiffs alleged that the defendant promised to grant them a dealership agreement in exchange for meeting certain conditions, and then refused to grant the dealership after the plaintiff met the conditions and purchased property for a showroom); *see also Midwest Energy, Inc. v. Orion Food Sys., Inc.*, 14 S.W.3d 154, 161 (Mo. Ct. App. 2000).

**Antitrust Counterclaims**

The Court agrees with Plaintiffs that Defendants' antitrust counterclaims are subject to dismissal. Section 1 of the Sherman Act provides that "[e]very contract . . . in restraint of trade or commerce among the several States . . . is declared to be illegal." 15 U.S.C. § 1.

> A tying arrangement is a device used by a seller with market power in one product market to extend its market power to a distinct product market. To accomplish this objective, the seller conditions the sale of one product (the tying product) on the buyer's purchase of a second product (the tied product). Tying arrangements are forbidden on the theory that, if the seller has market power over the tying product, the seller can leverage this market power through tying arrangements to exclude other sellers of the tied product.

*Rick-Mik Enters., Inc. v. Equilon Enters., LLC*, 532 F.3d 963, 971 (9th Cir. 2008) (citations omitted).

In *Illinois Tool Works, Inc. v. Independent Ink, Inc.*, 547 U.S. 28 (2006), the Supreme Court explained that "the essential characteristic of an invalid tying arrangement lies in the seller's exploitation of its control over the tying product to force the buyer into the purchase of a tied product that the buyer . . . might have preferred to purchase elsewhere on different terms." *Id.* at 34-35 (citation omitted). The Court concluded that many "tying arrangements . . . are fully consistent with a free, competitive market." *Id.* at 45. While tying arrangements that "are the product of a true monopoly" are still unlawful, "that conclusion must be supported by proof of power in the relevant market rather than by a mere presumption thereof." *Id.* at 42-43 (citation omitted).

The claimant has the burden of defining a relevant market in which the defendant's power can be assessed. *Se. Mo. Hosp. v. C.R. Bard, Inc.*, 642 F.3d 608, 613 (8th Cir. 2011). As noted above, Defendants claim that Plaintiffs unlawfully tied the sale of donut franchises/fast-breakfast food restaurant franchises to the purchase of new equipment for franchised stores. Courts generally reject antitrust claims based on such a purported relevant market. *See Rick-Mik Enters., Inc,* 532 F.3d at 972-73 (holding that conclusory allegation that gasoline station franchisor's intellectual property rights conferred market power was insufficient to allege market power in the relevant tying product market, gasoline franchises, as required to state a claim for antitrust violation based on the franchisor's alleged conditioning franchise purchase on the purchase of credit-card

processing services); *Martrano v. Quizno's Franchise Co.,* No. 08-0932, 2009 WL 1704469, at *11-12 (W.D. Pa. June 15, 2009) (dismissing a franchisee's tying antitrust claim that the defendant illegally tied the sale of its franchises to the subsequent sale of supplies and services, where the plaintiff posited as the relevant market quick service toasted sandwich restaurant franchises); *see also United Farmers Agents Ass'n. v. Farmers Ins. Ex*ch., 89 F.3d 233, 236-37 (5th Cir.1996) (affirming dismissal of Sherman Act and Clayton Act tying antitrust claims brought by franchisee; "Economic power derived from contractual agreements such as franchises . . . has nothing to do with market power, ultimate consumers' welfare, or antitrust.") (citation omitted).

Upon review of Defendants' third amended counterclaim, the Court concludes that Defendants have failed to state antitrust claims that are plausible on their face.[6]  As DBGI and DBI are mentioned in the counterclaim only with respect to the antitrust counts, these entities are dismissed from the action.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' motion for partial dismissal of Defendants' third amended counterclaim is **DENIED** as to Counts V, VI, and VII, and **GRANTED** as to Counts VIII and IX.   (Doc. No. 98.)

---

[6]   As indicated earlier, also pending before the Court is Plaintiffs' motion for summary judgment on all counterclaims (Doc. No. 91).   The Court will rule on that motion as an alternative to the motion to dismiss with respect to the antitrust counterclaims.

**IT IS FURTHER ORDERED** that Counterclaim Defendants Dunkin' Brands Group Inc. and Dunkin' Brands Inc. are dismissed from the action.

*Audrey G. Fleissig*
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 18th day of April, 2013.