UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DUNKIN' DONUTS FRANCHISING LLC; DD IP HOLDER LLC; BASKIN-ROBBINS FRANCHISING LLC; and BR IP HOLDER LLC, | )<br>)<br>)<br>)<br>) |
| Plaintiffs / Counterclaim Defendants, | )<br>) |
| vs. | ) Case No. 4:11CV01484 AGF<br>) |
| SAI FOOD HOSPITALITY, LLC, JAYANT PATEL, and ULKA PATEL, | )<br>)<br>) |
| Defendants / Counterclaim Plaintiffs, | )<br>) |
| DUNKIN' BRANDS GROUP INC. and DUNKIN' BRANDS INC., | )<br>)<br>) |
| Counterclaim Defendants. | ) |

## **MEMORANDUM AND ORDER**

This case is before the Court on the motion (Doc. No. 91) filed by Plaintiffs / Counterclaim Defendants[1] for summary judgment on all nine counts of Defendants' third amended counterclaim. The Court heard oral argument on the motion on March 12, 2013. By Memorandum and Order dated March 15, 2013 (Doc. No.124), the Court granted Plaintiffs' motion to strike Defendants' requests, in their counterclaims, for lost profits and punitive damages. By Memorandum and Order dated April 18, 2013 (Doc. No. 126), the

---

[1] The Court granted Defendants leave to add Dunkin' Brands Group Inc. ("DBGI") and Dunkin' Brands Inc. ("DBI"), as Counterclaim Defendants. According to the third amended counterclaim, DBI is "the franchisor of the Dunkin' system," and DBGI is the parent corporation of DBI and two Plaintiffs.

Court granted Plaintiffs' motion to dismiss Defendants' antitrust counterclaim, but denied Plaintiffs' motion to dismiss the other counterclaims. For the reasons set forth below, the motion for summary judgment shall be granted in part and denied in part.

## BACKGROUND

Much of the following background was set forth in the Court's April 18, 2013 Memorandum and Order. The Court will repeat that background, adding facts as appropriate, so that the present Memorandum and Order can stand alone. Plaintiffs are collectively the franchisor of the Dunkin' Donuts system,[2] which involves production, merchandising, and sale of donuts and other products using special equipment and management programs, and proprietary marks belonging to Plaintiffs. On February 5, 2009, Defendants Jayant Patel and his wife Ulka Patel signed a Store Development Agreement ("SDA") (Doc. No. 92-5), giving them the exclusive right and obligation to develop and open ten Dunkin' Donuts stores in the St. Louis, Missouri area, pursuant to a specified schedule, with the last store to open in January 2017, and each store to have a 20 year franchise.

Under the SDA, Jayant Patel and Ulka Patel agreed to pay a nonrefundable initial franchise fee of $40,000 for each store, for a total of $400,000, of which $133,330 was to be paid upon execution of the SDA, and additional payments of that amount due 12 and 24 months thereafter. They also agreed to sign a franchise agreement prior to commencement of construction of each store. Each store was required to be constructed and equipped to Plaintiffs' standards and specifications. The SDA also provided for a

---

[2] The system includes the related Baskin Robbins brand.

continuing franchise fee for each store, based upon a percentage of gross sales. Plaintiffs retained the right to pursue franchises at certain sites in the area, including the area airport, with Jayant Patel and Ulka Patel to be offered the first right of refusal as to those franchises. The SDA included a limitations provision that gave the parties two years after discovery of facts giving rise to a claim, to commence litigation.

Defendants learned as early as March 11, 2009, that Plaintiffs had chosen to award the opportunity to open a franchise at the airport to another franchisee, and Defendants knew that Plaintiffs made a final commitment to that franchisee when a franchise agreement for an airport store was entered into on December 31, 2009. Jayant Patel acknowledged in his deposition that he did not meet the prerequisites of the airport authorities for operating a Dunkin' Donuts franchise at the airport. (Doc. No. 92-23 at 275-78.)

Defendants allege that one year after they signed the SDA, Plaintiffs informed them that only store locations that met Plaintiff's preferred demographics and site characteristics would be approved. On June 30, 2010, the SDA was amended to adjust the store openings schedule and the dates for payment of the remaining initial franchise fee. (Doc. No. 92-6.) The amendment included the following release:

> [Franchisees] hereby release, remise and forever discharge [Plaintiffs] . . . of and from any and all claims, demands, causes of action . . . contracts (including without limitation any SDA, Franchise Agreement, lease and Sublease), agreements, promises, damages . . . both contingent and fixed, known and unknown, of every kind and nature whatsoever in law or equity, or otherwise, under local, state, or federal law, against any of them, which you . . . ever had, now have, or which you . . . hereafter can, shall, or may

3

> have, for, upon, or by reason of, any matter, cause, or thing whatsoever, from the beginning of the world to the date of these presents.
>
> Without limiting the generality of the foregoing, but by way of example only, the foregoing release shall apply to any and all state or federal antitrust claims or causes of action; state or federal securities law claims or causes of action; state or federal RICO claims or causes of action; breach of contract claims or causes of action; claims or causes of action based on misrepresentation or fraud; breach of fiduciary duty; unfair trade practices (state or federal); and all other claims and causes of action whatsoever.

On July 31, 2010, Defendant Sai Food & Hospitality, LLC ("SFH") was formed with ownership percentages as follows: 30 percent, the Jayant S. Patel and Ulkaben Patel Irrevocable Trust; 40 percent, Kamlesh Patel; and 30 percent, Jigar Patel. The parties dispute what Plaintiffs knew about the ownership interests of Kamlesh Patel and Jigar Patel, and whether they were (explicitly and/or implicitly) authorized to be franchisees. On November 19, 2010, the SDA was again amended reducing the number of stores that the franchisees were required to open from ten to nine and adjusting the total franchise fee accordingly. This amendment included the release provision quoted above.

Also on November 19, 2010, Plaintiffs entered into a franchise agreement with SFH as franchisee for a Dunkin' Donuts store in Washington, Missouri. The agreement was signed on behalf of SFH by Jayant Patel and Ulka Patel, as members. As part of the process for securing the Washington store franchise, Jayant Patel and Ulka Patel submitted to Plaintiffs a Certificate of Authority and Incumbency that identified them as the owners of SFH, each owning a 50 percent share of the company; and a copy of an IRS Form 2553 (Election for a Small Business Corporation) for SFH on which was stated that they were the owners of the company, with each owning a 50 percent share. According to

4

Defendants, when they signed the Washington store agreement, they paid Plaintiffs a franchise fee of $224,000, including $120,000 for equipment. The Washington store opened on December 6, 2010.

On April 1, 2011, Plaintiffs and SFH entered into a sublease agreement for property in Florissant, Missouri, for a Dunkin' Donuts store, with Ulka and Jayant Patel signing on SFH's behalf. On July 18, 2011, Plaintiffs asked for and were paid $1,000 to add Kamlesh Patel as a franchisee. On August 5, 2011, a franchise agreement for the Florissant store was signed by Plaintiffs and Jayant Patel, Ulka Patel, and Kamlesh Patel. Both franchise agreements provided that conditions of default by the franchisees included the commission of a fraud or violation of a law relating to a business franchised by Plaintiffs, with no cure period for such a default. The SDA and both franchise agreements contained a mutual waiver of a jury trial, punitive damages, and lost profits, in the event of a dispute. They also provided that Plaintiffs had "the right to specify all equipment to be used in connection with store operations" and "to require Franchisee to purchase additional equipment as part of the equipment package for each store." The agreements were to be interpreted in accordance with Massachusetts law.

Meanwhile, beginning in May 2011, Plaintiffs' Loss Prevention Department had been discussing with Defendants a civil lawsuit brought by the United States involving approximately $222,000 dollars in confiscated cash and cigarettes, in which Jayant Patel,

Jigar Patel, and Sai Enterprises Limited (not SFH) were identified as parties with an interest in the confiscated property.[3]

On August 24, 2011, Plaintiffs sent Defendants a Notice of Default and Termination, terminating the two franchise agreements, the sublease, and the SDA immediately upon Defendants' receipt of the Notice. (Doc. No. 92-35.) The stated grounds for termination was fraud and violation of the law in falsely representing that only Jayant and Ulka Patel owned SFH when the two additional owners, Kamlesh Patel and Jigar Patel, together held the majority interest in the company; and making the same false statement to the government on the Form 2553. The Notice demanded that Defendants immediately quit the premises subject to the sublease and deliver possession of the premises to Plaintiffs. The Notice stated that if Defendants contested termination, Plaintiffs would pursue the matter in court, and that during the litigation, Plaintiffs would honor their contractual obligations, but that any further investment in the franchises, including the Florissant store which was scheduled to open (and subsequently did open) on August 29, 2011, was at Defendants' own risk.

Plaintiffs commenced the present action on August 25, 2011, asserting that had they been aware of the true ownership of SFH, they would not have entered into the Washington Franchise Agreement or approved Defendants to become franchisees for the Florissant store. Plaintiffs claim that Defendants' conduct constituted a breach of the franchise agreements, breach of the sublease for the Florissant franchise, and breach of the SDA by Jayant and Ulka Patel (Counts I, II, and III, respectively). Plaintiffs also assert claims for

---
[3] The suit was filed on February 18, 2011.

6

trademark infringement, trade dress infringement, and unfair competition (Counts IV, V, and VI respectively) due to Defendants' continued use of Plaintiffs' trademarks after Plaintiffs terminated the above-noted agreements. For relief, Plaintiffs seek a declaration that they had a right to terminate the agreements in question, damages "in an amount as yet to be determined," statutory damages and attorney's fees, and injunctive relief directing Defendants to, among other things, take all necessary steps to transfer their leasehold interests in the store(s) to Plaintiffs or their designee(s).

On December 5, 2011, Defendants filed a counterclaim for declaratory relief in which they alleged that changes to SFH's operating agreement and ownership interests were all made at the behest of, and with the knowledge and approval of, Plaintiffs. Defendants sought a declaration that they were in compliance with their obligations under the franchise agreements and that Plaintiffs wrongfully terminated the agreements. On June 1, 2012, Plaintiffs advised Defendants that they could terminate the Washington store franchise and Defendants did so on June 15, 2012.

On July 11, 2012, the Court granted Defendants leave to file an amended counterclaim, which included the nine counts in their current third amended counterclaim filed on December 26, 2012. Defendants allege that approximately one year after signing the SDA they were told that Plaintiffs would only approve store locations that met certain site and demographic requirements. They further allege that by August 5, 2011, they had invested approximately $590,000 (including the $40,000 initial franchise fee and

approximately $175,000 for new equipment)[4] to open the Florissant store, and that contrary to the termination letter, they did not commit fraud, violate any laws, or engage in any deceptive practices in connection with their relationship with Plaintiffs.

In Counts I, II, III, and IV of their third amended counterclaim, Defendants claim, respectively, wrongful termination of the franchise agreements under the Missouri Franchise Act ("MFA"), Mo. Rev. Stat. § 407.405, which requires 90-days' notice prior to termination of a franchise; breach of the SDA by opening franchises in the airport without giving Jayant Patel and Ulka Patel the first right of refusal, and by changing the terms of the SDA so as to impose new demographic requirements for store locations; breach of the Washington store franchise agreement by wrongfully terminating the agreement; and breach of the Florissant store franchise agreement by wrongful termination.

Defendants also bring claims for promissory estoppel related to the Florissant store franchise agreement, asserting that Plaintiffs terminated that agreement without legal justification or notice and should be estopped from doing so, or alternatively, pay Defendants their resulting damages (Count V); willful termination -- prima facie tort related to the termination of the franchises (Count VI); and misrepresentations to Defendants to change SFH's business structure, upon which Defendants relied, resulting in the unlawful terminations (Count VII). In addition, Defendants assert claims against Plaintiffs and against DBGI and DBI for violation of the Sherman Act and Clayton Act (Count VIII) and state anti-trust law (Count IX) due to unlawful tying of the sale of donut

---

[4] It is not entirely clear whether the $175,000 was alleged to be part of, or in addition to, the $590,000.

franchises / quick-serve donut-coffee restaurant franchises (the tying product) to the purchase of the equipment needed to operate the franchised stores. With respect to the anti-trust counts, Defendants allege that Plaintiffs and DBGI and DBI exercised market control over the tying product.

As relief, Defendants seek "actual damages" in Counts I through IV (including recoupment of investment, lost profits, damage to business reputation); "damages" in Count V; "actual damages in tort" in Counts VI and VII; statutory damages trebled, including damages for lost profits in Count VIII; and statutory damages trebled in Count IX. (Doc. No. 82 at 14-48). Defendants are still operating the Florissant store.

## ARGUMENTS OF THE PARTIES

Plaintiffs argue that they are entitled to summary judgment on Count I of the counterclaim because the SDA is not a "franchise" within the meaning of the MFA, and Defendants suffered no damages resulting from their failure to receive 90-days' notice of the termination of the franchise agreements, as they continue to operate the Florissant franchise and voluntarily elected to close the Washington franchise.

Plaintiffs argue that they are entitled to summary judgment on Counts II, III, and IV of the counterclaim, because the releases in the amendments to the SDA bar any claim related to the airport and to Plaintiffs' development strategy; Defendants cannot establish damages in connection with their wrongful termination counterclaims; Defendants' counterclaims for breach of the SDA are barred by the SDA's two-year limitations provision; Defendants cannot maintain their breach of contract counterclaim based on the

two franchise agreements because they fail to cite to any provision of those agreements that was allegedly breached. Further, with respect to the Washington franchise agreement, Plaintiffs argue that Defendants' voluntary closing of the Washington store waived any claim for wrongful termination of that agreement; and with respect to the Florissant franchise agreement, Defendants failed to show that they sustained damages as a result of its termination.

Plaintiffs argue that they are entitled to summary judgment on Defendants' counterclaim for promissory estoppel (Count V) because a valid and binding contract exists between the parties; Defendants cannot pursue a claim of prima facie tort (Count VI) because they have other adequate remedies available to them; and Defendants' counterclaim of negligent misrepresentation (Count VII) fails because Defendants cannot establish that they relied on any false information from Plaintiffs.

Plaintiffs argue that Defendants released any and all antitrust claims (Counts VIII and IX) against Plaintiffs by virtue of the releases in the amendments to the SDA; the antitrust claims are time-barred; Defendants have not defined a plausible relevant market for the tying product; Defendants cannot show that Plaintiffs exercised market power over potential franchisees; Defendants' claim under the Clayton Act fails as a matter of law, because the relevant section of the Clayton Act does not apply to franchises; and Defendants assert no legitimate basis for their state antitrust claim. Plaintiffs add that DBGI and DBI were not parties to the contracts or negotiations at issue, and constitute

separate legal entities from the franchisor of the Dunkin' system. Thus, according to Plaintiffs, Defendants have no basis to bring any claims against DBGI and DBI.

Defendants argue that the MFA clearly applies to the franchise agreements, and the SDA is so interconnected with those agreements, that it too is covered by the MFA. They argue that the closing of the Washington store was not voluntary under the circumstances, and that they will prove their recoverable MFA damages, including loss of good will and costs of the suit, with sufficient certainty. They argue that the breach of contract claims in Counts II, III and IV, are flip sides of Plaintiffs' own breach of contract claims, with respect to all of which there remain material questions of fact, precluding the grant of summary judgment. They maintain that it would be against public policy to enforce the release in the amendments to the SDA with respect to Court II – the claims of breach of contact based on the airport franchise and change in development strategy – claims that existed at the time the amendments were executed.

Defendants maintain that they can proceed on their claims of promissory estoppel, prima facie tort, and misrepresentation as alternative theories to their breach of contract claims. More specifically, they argue that all the facts relied upon for the termination of the Florissant franchise agreement were known to Plaintiffs before that agreement was signed on August 5, 2012, yet Plaintiffs encouraged continued investment by Defendants in that franchise. Defendants reassert that the information in SFH's original Operating Agreement that was used to justify Plaintiff's claim of fraud was provided at Plaintiffs' direction, and that the SDA and franchise agreements were not terminated "because of

11

some ownership misrepresentation" at the time the Washington franchise agreement was signed, but rather that the federal confiscation suit "seems to be the reason" for the terminations. (Doc. No. 109 at 26.)

Defendants argue that in light of the provision in the SDA granting Defendants the right to specify equipment to be used in the stores and to require franchisees to purchase equipment, the essential elements of an antitrust claim have been met. Their arguments on these claims address the motion for summary judgment as if it were a motion to dismiss, arguing that "Plaintiff's motion to dismiss should . . . be denied." (Doc. No. 109 at 32.)

## **DISCUSSION**

Summary judgment is appropriate only when no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2). Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the nonmoving party. *Minn. Deli Provisions, Inc. v. Boar's Head Provisions Co.,* 606 F.3d 544, 548 (8th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Although the Court must view the facts and inferences in the light most favorable to the non-movants, they have "the obligation to come forward with specific facts showing that there is a genuine issue for trial." *See id*. (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## **The MFA**

The Court agrees with Defendants that Plaintiffs have not presented sufficient evidence that shows that Plaintiffs are entitled to summary judgment on Defendants'

claims under the MFA with regard to the franchise agreements. *See, e.g., Cole v. Homier Distributing Co.*, 599 F.3d 856, 868 (8th Cir. 2010) (holding that the existence of factual disputes precluded the grant of summary judgment on the plaintiff's claim that termination of its franchise agreement violated the MFA). To be sure, Defendants will have to prove their damages beyond mere speculation, *see id*. at 866, but their ability to do so remains to be seen. Defendants, however, have cited no cases supporting their position that breach of the SDA as a separate claim is covered by the MFA, and the Court concludes that it is not.

**Breach of Contract**

With limited exception, the Court agrees with Defendants that their breach of contract claims are flip sides of Plaintiffs' breach of contract claims. Material questions of fact remain on whether Plaintiffs were entitled to terminate the agreements or whether in doing so, they breached the agreements. *See, e.g., Wash Solutions, Inc. v. PDQ Mfg., Inc*., No. 4:01CV2028MLM, 2003 WL 25737112, at \*6 (E.D. Mo. April 14, 2003) (denying summary judgment on breach of contract claims in franchise context).

The exceptions are Defendants' claims in Count II of the third amended counterclaim that Plaintiffs breached the SDA by not offering the airport franchise to Defendants and by changing Plaintiffs' development strategy for the location of stores. First, as noted above, the record establishes that Defendants did not have the qualifications to operate the airport franchise. Second, Defendants' have not presented a persuasive argument why the release in the amendments to the SDA, and/or the two-year limitations

period in the SDA itself, do not preclude Count II. Accordingly, summary judgment will be granted on Count II of the third amended counterclaim.

**State Torts**

To succeed in a fraud/misrepresentation claim under Missouri law, a plaintiff must prove: (1) the defendant made a material representation; (2) with knowledge of its falsity; (3) with intent that the plaintiff rely on that representation; (4) that the plaintiff was ignorant of the falsity; (5) that the plaintiff justifiably relied upon the representation; and (6) that plaintiff was damaged by that representation. *Cole,* 599 F.3d at 862. To state a claim of promissory estoppel, a plaintiff must allege a promise made by the defendant; foreseeable, detrimental reliance on the promise by the plaintiff; and that an injustice would occur unless the promise is enforced. *Jamison Elec. L.L.C. v. Dave Orf, Inc.*, ___ S.W. 3d ___, 2013 WL 1411994, at *2 (Mo. Ct. App. April 9, 2013). "[T]he existence of a contract usually defeats a promissory estoppel claim if the remedy sought is damages . . . rather than specific enforcement of the promise." *Olson v. Curators of Univ. of Mo.*, 381 S.W.3d 406, 410 (Mo. Ct. App. 2012).

Here, the Court will allow Defendants to proceed with their state law torts as alternative theories for relief to their breach of contract and MFA claims. As noted above, here Defendants seek to estop Plaintiffs from terminating the Florissant franchise agreement, and not just damages. Thus the breach of contract claim with respect to that agreement does not defeat the promissory estoppel claim.

**Antitrust**

The Court agrees with Plaintiffs that Defendants' antitrust counterclaims, assuming they should have survived dismissal, are subject to summary judgment in Plaintiffs' favor. As noted in the Court's April 18, 2013 Memorandum and Order, Section 1 of the Sherman Act provides that "[e]very contract . . . in restraint of trade or commerce among the several States . . . is declared to be illegal." 15 U.S.C. § 1.

> A tying arrangement is a device used by a seller with market power in one product market to extend its market power to a distinct product market. To accomplish this objective, the seller conditions the sale of one product (the tying product) on the buyer's purchase of a second product (the tied product). Tying arrangements are forbidden on the theory that, if the seller has market power over the tying product, the seller can leverage this market power through tying arrangements to exclude other sellers of the tied product.

*Rick-Mik Enters., Inc. v. Equilon Enters*., LLC, 532 F.3d 963, 971 (9th Cir. 2008) (citations omitted).

In *Ill. Tool Works, Inc. v. Ind. Ink, Inc*., 547 U.S. 28 (2006), the Supreme Court explained that "the essential characteristic of an invalid tying arrangement lies in the seller's exploitation of its control over the tying product to force the buyer into the purchase of a tied product that the buyer . . . might have preferred to purchase elsewhere on different terms." *Id.* at 34-35. The Court concluded that many "tying arrangements . . . are fully consistent with a free, competitive market." *Id.* at 45. While tying arrangements that "are the product of a true monopoly" are still unlawful, "that conclusion must be supported by proof of power in the relevant market rather than by a mere presumption thereof*.*" *Id.* at 43-44 (citation omitted).

The claimant has the burden of defining a relevant market in which the alleged market power can be assessed. *Se. Mo. Hosp. v. C.R. Bard, Inc.*, 642 F.3d 608, 613 (8th Cir. 2011). As noted above, Defendants claim that Plaintiffs unlawfully tied the sale of donut franchises/fast-breakfast food restaurant franchises to the purchase of new equipment for franchised stores. Courts generally reject antitrust claims based on such a purported relevant market. *See, e.g., Rick-Mik Enters., Inc.,* 532 F.3d at 972; *Schlotzsky's, Ltd. v. Sterling Purchasing & Nat'l Distribution Co.*, 520 F.3d 393, 407 (5th Cir. 2008). Moreover, the undisputed facts with regard to the equipment options available to Defendants belies their assertion of any unlawful tying arrangement. Defendants have presented no evidence to persuade the Court that Plaintiffs' motion for summary judgment on Counts VIII and IX is not well-taken.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' motion for summary judgment on Defendants' third amended counterclaim is **GRANTED** in part and **DENIED** in part. The motion is **GRANTED** as to Count I of the counterclaim related to the SDA; as to Count II of the counterclaim; and as alternative relief with respect to the antitrust claims (Counts VIII and IX). The motion for summary judgment is **DENIED** in all other respects. (Doc. No. 91.)

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 15th day of May, 2013.