UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DUNKIN= DONUTS FRANCHISING LLC; DD IP HOLDER LLC; BASKIN-ROBBINS FRANCHISING LLC; and BR IP HOLDER LLC, | ) ) ) ) ) | |
| Plaintiffs / Counterclaim Defendants, | ) ) | |
| vs. | ) ) | Case No. 4:11CV01484 AGF |
| SAI FOOD HOISPITALITY, LLC, JAYANT PATEL, and ULKA PATEL, | ) ) ) | |
| Defendants / Counterclaim Plaintiffs, | ) ) | |
| DUNKIN' BRANDS GROUP INC. and DUNKIN' BRANDS INC., | ) ) ) | |
| Counterclaim Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on two motions in limine filed by Plaintiffs to exclude evidence of certain damages Defendants seek in their third amended counterclaim. Plaintiffs' Motion in Limine No. 1 (Doc. No. 145) seeks to exclude Defendants from introducing evidence of damages related to the Florissant store; and Plaintiffs' Motion in Limine No. 2 (Doc. No. 147) seeks to exclude evidence regarding damages under the Missouri Franchise Act.

By way of brief background, Defendants (as counterclaim Plaintiffs) claim that Plaintiffs' August 24, 2011 termination of a Store Development Agreement ("SDA") and two Franchise Agreements, one for a store in Washington, Missouri, and one for a store

in Florissant, Missouri, was wrongful. The SDA was dated February 5, 2009; the Washington Franchise Agreement was dated November 19, 2010, and that store opened on December 6, 2012; and the Florissant Franchise Agreement was dated August 5, 2011. The termination notice, based upon alleged fraud on Defendants' part, told Defendants that if they contested the termination, they could continue to operate the two stores and Plaintiffs would honor their contractual obligations during the course of the litigation, but that any additional expenditures or investments by Defendants would be "without prejudice to [Plaintiffs'] rights to pursue any remedy, including termination of the relationship," and would be at Defendants' own risk.

On June 15, 2012, Defendants closed the Washington store pursuant to a proposal by Plaintiffs; they are still operating the Florissant store. Defendants have not sought rescission of any of the agreements. Defendants disclosed to Plaintiffs that during the course of the suit, they received offers to purchase the SDA for $73,000 and the Florissant franchise for $200,000. Their damages expert, Kevin Summers, concludes that as a result of the allegedly wrongful terminations, Defendants sustained "recoupment damages" of approximately $304,000 related to the Washington store; approximately $666,000 related to the Florissant store; and approximately $146,000 related to the SDA. The damages related to the stores consist primarily of construction and development costs. (Summers' Second Supp. Expert Rep., Doc. No. 172-3.)

Plaintiffs do not challenge Defendants' theory of damages with respect to the Washington store or SDA, but argue that because Defendants have continued to operate the Florissant store, they cannot have suffered any damages related to that store due to the

2

termination, assuming the termination was wrongful. Plaintiffs maintain that Defendants cannot continue to operate the store and also recover their investment costs.

In their opposition to the motion in limine to exclude damages related to the Florissant store, Defendants characterized the damages they seek as "reliance damages," designed to take Defendants back to the position they would have been in had the agreements never been made. They assert that they have continued to operate the Florissant store in an effort to mitigate damages, and that they intend to present evidence that the value of the Florissant Franchise Agreement and Florissant store have declined as a result of Plaintiffs' termination.

At oral argument on the motions in limine, Defendants represented that the damages they were seeking in relation to the Florissant store were "diminution-in-value damages" and "reliance damages." The Court expressed concern as to whether Defendants had properly disclosed their claimed diminution-in-value damages to Plaintiffs, and gave Defendants the opportunity to show the Court that they had done so. The Court noted that absent such showing, it would not allow Defendants to pursue that theory of damages. Similarly, the Court gave Defendants the opportunity to show that they properly disclosed loss of good will and/or loss of reputation damages, as recoverable under the Missouri Franchise Act, again noting that absent such a showing, any evidence of such damages would be precluded.

By supplemental brief, Defendants maintain they "fully disclosed the amount invested in the Florissant Store, and its current fair market value. 'Diminution in value' is merely a method of calculating reliance damages, and in no way surprises or ambushes

3

[Plaintiffs] as both the investment and the fair market value were fully disclosed." (Doc. No. 172 at 1.) Defendants point to the prayer in their counterclaim for damage to their good will and reputation under the Missouri Franchise Act, but they do not explain how they intend to prove loss of goodwill or reputation, other than by evidence of what they invested in the stores and what the stores and agreements are worth after the termination.

Upon review of the record, the Court concludes that if Defendants prevail on their claim that termination of the agreements was wrongful, they would be entitled to recoup their investment in the Florissant store, less the current value of the store and profits they realized. Under general principles of Missouri law, a party who prevails on a breach of contract claim, "should be fully compensated for its loss, but not recover a windfall. The ultimate test for damages is whether the award will fairly and reasonably compensate the plaintiff for its injuries." *Lift Truck Lease & Serv., Inc. v. Nissan Forklift Corp., N. Am.*, No. 4:12-CV-153 CAS, 2013 WL 3092115, at *6 (E.D. Mo. 2013) (citations omitted).

As explained by one court in a very similar context, citing Corbin on Contracts, Vol. 5, § 1031 (§ 55-1 in revised ed. 2005),

> If a party seeks the remedy of damages two alternative methods for determining recovery are available: (1) he may prove the gains he would have made had the defendant performed in full as the contract required subtracting therefrom the costs of the operations necessary to realize those gains, *i.e.*, the injured party may seek lost profits and in such case the interest he seeks to protect is his 'expectation interest'; (2) he may omit an attempt to show lost profits and prove instead his actual expenditures made before the repudiation or nonperformance by the defendant insofar as those expenditures were reasonably to have been foreseen, *i.e.*, expenditures made in preparation for performance or in part performance and in such case the interest the plaintiff seeks to protect is his 'reliance interest.' . . .

4

> The basic reason for such allowance is that profits may be too speculative to form a part of any damage award.

*Beefy Trail, Inc. v. Beefy King Int'l., Inc*., 267 So. 2d 853, 856 (Fla. Dist. Ct. App. 1972); *see also Lift Truck Lease & Serv., Inc.*, 2013 WL 3092115, at *6 (recognizing that a franchisee's "reliance interest in the . . . franchise and the expenditures it made in performance of the franchise agreement . . . is a recognized alternative basis for damages" for breach of the agreement by the franchisor) (citing Restatement (Second) of Contracts, § 349).

Plaintiffs seem to acknowledge that recoupment damages, as presented by Summers, are a valid theory of recovery related to the Washington store. The Court fails to discern why this should not also be a valid theory related to the Florissant store, of course adjusting the recoverable damages to account for profits realized by Defendants in the operation of that store and the remaining value of the store.

In their Supplemental Memorandum, Defendants at times reference "reliance damages" and "diminution in value" as though the theories are the same. They are not. Defendants have not, through their expert or otherwise, disclosed a diminution in value calculation or approach. It would be unfair to permit them to do so now.

As stated above, a recoupment approach will require amounts to be adjusted for profits realized and the value of the store and SDA. Defendants confirmed this approach to damages at the hearing. Defendants' expert has opined

that the "fair market value of Sai's ownership interest" in the Florissant franchise and the SDA is $200,000 and $73,000, respectively. (Summer Prelim. Expert Rep., at 2.) No basis for these values is disclosed in Defendants' expert reports, and the sole basis offered in Defendants' Supplemental Memorandum is the two offer letters received and disclosed among Summers' supporting documents. (Supp. Memo., at 4, Doc. No. 172.) To the extent Defendants offer evidence of the current fair market value of the Florissant franchise and the SDA, they shall be limited to these two amounts, and shall not be permitted, through their expert or otherwise, to offer any basis for the values other than the offer letters.

The Court agrees with Plaintiffs that Defendants have not disclosed by an expert report or otherwise, what damages they sustained to their good will and reputation.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion in Limine No. 1 to exclude evidence of damages related to the Florissant store is **DENIED**. (Doc. No. 145.)

**IT IS FURTHER ORDERED** that Plaintiffs' Motion in Limine No. 2 is **GRANTED** with respect to damages for loss of good will and/or loss of reputation under the Missouri Franchise Act. (Doc. No. 147.)

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 16th day of July, 2013.