UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DUNKIN' DONUTS FRANCHISING )
LLC; DD IP HOLDER LLC; BASKIN- )
ROBBINS FRANCHISING LLC; BR )
IP HOLDER LLC; and DB REAL )
ESTATE ASSETS I LLC, )
                                                                )
    Plaintiffs / Counterclaim Defendants, )
                                                                )
      vs. )      Case No. 4:11CV01484 AGF
                                                                 )
SAI FOOD HOSPITALITY, LLC; )
JAYANT PATEL; ULKA PATEL; and )
KAMLESH PATEL, )
                                                                 )
    Defendants / Counterclaim Plaintiffs, )
                                                                 )
DUNKIN' BRANDS GROUP INC. and )
DUNKIN' BRANDS INC., )
                                                                 )
    Counterclaim Defendants. )

## MEMORANDUM AND ORDER

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

    This case is before the Court, following a bench trial, on the motion (Doc. No. 191) of Defendants/Counterclaim Plaintiffs ("Defendants" hereinafter) for judgment[1]; and for findings of fact and conclusions of law and entry of judgment thereon, pursuant to Federal

---

[1] Defendants titled their motion as one for a directed verdict, but because this was a bench tried case, the motion is properly viewed as a motion for judgment on partial findings pursuant to Federal Rule of Civil Procedure 52(c). *See Van Horn v. Specialized Support Servs., Inc.*, 269 F. Supp. 2d 1064, 1069 (S.D. Iowa 2003) (citing *Mullin v. Town of Fairhaven*, 284 F.3d 31, 36 (1st Cir. 2002)).

Rule of Civil Procedure 52(a).  For the reasons set forth below, Defendants' motion shall be denied, and judgment shall be entered in favor of Plaintiffs/Counterclaim Defendants ("Plaintiffs" hereinafter) on their claims and on Defendants' counterclaims.

## FINDINGS OF FACT

The evidence at trial, conducted from August 13 to August 19, 2013, established the following.  Plaintiffs are collectively the franchisor of the Dunkin' Donuts system,[2] which involves production, merchandising, and sale of donuts and other products using special equipment and management programs and proprietary marks belonging to Plaintiffs.  On February 5, 2009, Defendants Jayant Patel and his wife Ulka Patel signed a Store Development Agreement ("SDA"), giving them the exclusive right and obligation to develop and open ten Dunkin' Donuts stores in the St. Louis, Missouri, area, pursuant to a specified schedule, with the last store to open in January 2017, and each store to have a 20 year franchise.

Under the SDA, Jayant Patel and Ulka Patel agreed to pay a nonrefundable initial franchise fee of $40,000 for each store, for a total of $400,000, of which $133,330 was to be paid upon execution of the SDA, and additional payments of the total amount due in installments thereafter.  They also agreed to sign a franchise agreement prior to commencement of construction of each store.  The SDA also stated that if Jayant Patel and and Ulka Patel proposed to add or subtract owners or change the ownership percentages for a franchise agreement entered into under the SDA, the proposal was subject to Defendants' prior written consent.  Each store was required to be constructed and equipped to

---

[2] The system includes the related Baskin Robbins brand.

Case: 4:11-cv-01484-AGF   Doc. #:  230   Filed: 12/31/13   Page: 3 of 19 PageID #: 6221

Plaintiffs' standards and specifications.  The SDA also provided for a continuing franchise fee for each store, based upon a percentage of gross sales.  Plaintiffs retained the right to pursue franchises at certain sites in the area, including the area airport, with Jayant Patel and Ulka Patel to be offered the first right of refusal as to those franchises, subject to certain conditions.  The SDA contemplated that once a site for a franchise was approved, the franchisee would sign a then-current version of Plaintiffs' standard franchise agreement for that location.  The SDA provided that Plaintiffs could terminate it, without any opportunity to cure, if Jayant Patel or Ulka Patel committed fraud upon Plaintiffs or if Plaintiffs terminated any of the franchise agreements entered into under the SDA.

In mid-2010, Plaintiffs offered Jayant Patel and Ulka Patel the opportunity to open a franchise in Washington, Missouri.  On July 31, 2010, Defendant Sai Food & Hospitality, LLC ("SFH") was formed by the individual Defendants to serve as the corporate franchisee of the franchises to be opened under the SDA.  The ownership percentages of SFH were as follows: 30 percent, the Jayant S. Patel and Ulkaben Patel Irrevocable Trust; 40 percent, Kamlesh Patel; and 30 percent, Jigar Patel.  Plaintiffs told Jayant Patel that if he wanted to use SFH as the corporate franchisee for the Washington store (as opposed to he and Ulka Patel signing the contract in their individual capacities), he would need to remove Jigar Patel and Kamlesh Patel from the entity's ownership given that they were not yet approved franchisees.

Jayant responded that he and Ulka Patel would sign the Washington Franchise Agreement on behalf of SFH and that Kamlesh Patel and Jigar Patel would be dropped

3

from SFH's ownership until they could become qualified.  In response to requests from Plaintiffs for proof that the ownership structure of SFH had been changed, Jayant Patel and Ulka Patel submitted to Plaintiffs a copy of an IRS Form 2553 (Election for a Small Business Corporation) dated October 15, 2010, for SFH on which was stated that Jayant Patel and Ulka Patel were the owners of the company, with each owning a 50 percent share. Plaintiffs continued to ask Jayant Patel for corporate minutes reflecting the changed structure of SFH.

At trial Defendants asserted that they held a board meeting on October 15, 2010, at which SFH changed its ownership to 50 percent Jayant Patel and 50 percent Ulka Patel and that Defendants faxed to Plaintiffs a copy of minutes from the alleged meeting.  Based on the documentary evidence, and having had an opportunity to observe the witnesses, the Court does not find Defendants' assertion to be credible.  To the contrary, as described more fully below, the Court finds that Defendants continued the original ownership structure of SFH, a fact they concealed from Plaintiffs, wrongfully assuming that Kamlesh Patel and Jigar Patel both would eventually by approved as franchisees.  Defendants never did provide the requested board minutes to Plaintiffs.  Based on Plaintiffs' reasonable belief that SFH's ownership structure had in fact been changed, Plaintiffs continued their relationship with SFH.

On November 19, 2010, Plaintiffs entered into a franchise agreement with SFH as franchisee for a store in Washington, Missouri.  The agreement was signed on behalf of SFH by Jayant Patel and Ulka Patel, as its members.  Along with the signed agreement,

Jayant Patel and Ulga Patel also sent Plaintiffs a Certificate of Authority and Incumbency by Members of a Limited Liability Company in which they identified themselves as the only owners of SFH.

When the Washington Franchise Agreement was signed, SFH paid Plaintiffs a franchise fee of $224,000, including approximately $120,000 for equipment. Also on November 19, 2010, SFH and Plaintiffs entered into a Sublease for the Washington store. The Sublease provided that Plaintiffs had the right to terminate the Sublease if the corresponding Franchise Agreement for the store was terminated for any reason. The Washington store opened on December 6, 2010.

Jiggar Patel and Kamlesh Patel applied to Plaintiffs to be approved as franchisees. On March 24, 2011, before Plaintiffs acted upon the applications, SFH signed a lease with a third-party landlord for property in Florissant, Missouri, for development of another Dunkin' Donuts store. The site had previously been conditionally approved by Plaintiffs for a new store under the SDA. The lease was signed on behalf of SFH by Jayant Patel, Ulka Patel, Kamlesh Patel, and Jigar Patel as members of SFH.

In or around April 2011, Plaintiffs approved Kamlesh Patel's application to become a franchisee. In May 2011, Plaintiffs' Loss Prevention Department began investigating possible underreporting of sales at the Washington store. As part of the investigation, Plaintiffs asked Jayant Patel and Ulka Patel to submit certain corporate records, including SFH's income tax return for 2010 with all schedules and attachments. On May 31, 2011, Jayant Patel submitted the return but without the K-1 forms that showed who the owners of

5

SFH were for the entirety of 2010. In late June, after receiving from Plaintiffs a formal Notice to Cure requiring the K-1s, Jayant Patel sent K-1 forms showing the owners of SFH in 2010 as Jayant Patel (30 percent), Jigar Patel (30 percent), and Kamlesh Patel (40 percent).

On or before May 19, 2011, Plaintiffs became aware of a civil forfeiture lawsuit brought by the United States (in February 2011) involving approximately $222,000 in confiscated cash and cigarettes, in which Jayant Patel, Jigar Patel, and Sai Enterprises Limited (not SFH) were identified as parties with an interest in the confiscated property. On or about May 19, 2011, Plaintiffs denied Jigar Patel's application to become a franchisee for the stated reason of his involvement in the forfeiture action.

Meanwhile, SFH continued with construction of the Florissant store. On July 14, 2011, Plaintiffs' Loss Prevention Department completed its investigation and report in which it concluded that Jayant Patel and Ulka Patel fraudulently induced Plaintiffs to enter into the Washington Franchise Agreement by misrepresenting that they were the sole owners of SFH. The report was thereafter sent to Plaintiffs' Legal Department for review and further action.

On August 5, 2011, Plaintiffs and SFH entered into a franchise agreement for the Florissant store with Jayant Patel, Ulka Patel, and Kamlesh Patel signing as members of SFH. Both the Washington and Florissant Franchise Agreements provided that conditions of default by the franchisees included the commission of fraud or violation of a law relating to a business franchised by Plaintiffs, with no cure period for such a default.

6

The agreements provided that upon such a default, Plaintiff had the right to immediately terminate the agreements.

The SDA and both franchise agreements provide that they are to be interpreted in accordance with Massachusetts law.   The franchise agreements require that upon termination, Defendants cease using Plaintiffs' proprietary marks and trade dress, and that the Defendants pay attorney's fees and costs incurred by Plaintiffs in "enforcing any provisions" therein.

Both franchise agreements contain a "Waiver of Rights" provision that includes the following language:

> The parties waive and agree not to include in any pleading or arbitration demand: class action claims; demand for trial by jury; claims for lost profits; or claims for punitive, multiple, or exemplary damages.   If any pleading is filed that contains any of these claims or a jury demand, or if a court determines that all or any part of the waivers are ineffective, then the pleading shall be dismissed with prejudice, leaving the pleading party to its arbitration remedy.

All four agreements between the parties (i.e., the SDA, the two franchise agreements, and the Washington Sublease) contain cross-default provisions.

By August 24, 2011, Plaintiffs' Legal Department made the final decision to terminate Plaintiffs' agreements with Defendants and on that date sent Defendants a Notice of Default and Termination, terminating the two franchise agreements, the Washington store sublease, and the SDA immediately upon Defendants' receipt of the Notice.   The stated grounds for the termination were fraud and violation of the law in falsely representing in the fall of 2010 that only Jayant and Ulka Patel owned SFH when the two

7

additional owners, Kamlesh Patel and Jigar Patel, together held the majority interest in the company; and making the same false statement to the government on the IRS Form 2553. The Notice demanded that Defendants immediately quit the premises subject to the sublease and deliver possession of the premises to Plaintiffs.   The Notice stated that if Defendants contested termination, Plaintiffs would pursue the matter in court, and that during the litigation, Plaintiffs would honor their contractual obligations, but that any further investment in the franchises, including the Florissant store which was scheduled to open, and subsequently did open, on August 29, 2011, was at Defendants' own risk.

While the litigation was pending, Defendants continued to operate both stores.   On June 1, 2012, Plaintiffs advised Defendants that they could terminate the Washington store franchise and Defendants chose to do so on June 15, 2012.   At the time of trial, Defendants were still operating the Florissant store.

Defendants assert that Plaintiffs had no basis to terminate the agreements. Defendants testified that they amended the ownership interests of SFH at a board meeting on October 15, 2010, and that Plaintiffs' allegations of fraud were pretext to terminate based on the forfeiture action.   But the Court finds Defendants' testimony is not credible and is inconsistent with more reliable evidence.   For example, Defendants' assertion that they changed the ownership of SFH is contrary to the lease they later signed for the Florissant store and to Defendants' own tax returns, and is inconsistent with their own accountant's testinmony.

The Court finds, based on the evidence and the Court's assessment of the witnesses' credibility, that Defendants knowingly misrepresented to Plaintiffs in the fall of 2010 that Jayant Patel and Ulka Patel were the sole owners of SFH, when they knew that prior approval as franchisees of all individual members of SFH was required by Plaintiffs.

The Court further concludes that Defendants' misrepresentation of the ownership interests of SFH was a material misrepresentation that fraudulently induced Plaintiffs to enter into the franchise agreements. The Court credits Plaintiffs' evidence at trial that had they been aware of the true ownership of SFH in the fall of 2010 (i.e., 30 percent the Jayant S. Patel and Ulkaben Patel Irrevocable Trust; 40 percent Kamlesh Patel; and 30 percent Jigar Patel), they would not have entered into the franchise agreements. The Court further finds that Plaintiffs had a right to rely on the Certificate of Corporate Incumbency and the IRS Form 2553 when they signed the franchise agreements, and that the identity of the members of SFH was a material factor in Plaintiffs' franchising decisions at issue.

## **CLAIMS AND PROCEDURAL POSTURE**

Plaintiffs claim that Defendants' conduct of misrepresenting the ownership of SFH constituted a breach of the franchise agreements, the Washington sublease, and the SDA by Jayant and Ulka Patel (Counts I, II, and III, respectively). Plaintiffs also assert claims under the Lanham Act, 15 U.S.C. § 1114, and applicable state law for trademark infringement, trade dress infringement, and unfair competition (Counts IV, V, and VI respectively) due to all Defendants' continued use of Plaintiffs' trademarks after Plaintiffs terminated the franchise agreements. For relief, Plaintiffs seek a declaration that they had

a right to terminate the agreements in question, injunctive relief enjoining Defendants from continued use of Plaintiff's intellectual property, actual damages "in an amount as yet to be determined," and attorney's fees under the Lanham Act and the franchise agreements.[3]

By way of counterclaim, Defendants claim wrongful termination of the franchise agreements under the Missouri Franchise Act ("MFA"), Mo. Rev. Stat. § 407.405, which requires 90-days' notice prior to termination of a franchise (Count I); breach of the SDA (Count II); and breach of the two franchise agreements by wrongful termination (Counts III and IV). Defendants also bring a claim for promissory estoppel related to the Florissant store, asserting that from August 5 to August 24, 2011, Plaintiffs represented to Defendants that Defendants were in compliance "with the franchise," and Defendants relied upon these representations to open the Florissant store, such that Plaintiffs should be estopped from terminating the Florissant franchise agreement or alternatively, pay Defendants their resulting damages (Count V). They assert claims of willful termination -- prima facie tort related to the termination of the franchises (Count VI); and misrepresentations to Defendants telling them to change SFH's business structure, upon which Defendants relied, resulting in the unlawful terminations (Count VII). The damages Defendants seek include recoupment of investment and damage to business reputation.

After Plaintiffs and Defendants presented their evidence, with the exception of the testimony of Defendants' damages expert on their counterclaims, Defendants moved for judgment of partial findings under Federal Rule of Civil Procedure 52(c) on Plaintiffs'

---

[3] In their complaint, Plaintiffs also sought treble damages under the Lanham Act, but at trial they stated that they were abandoning this damages claim.

10

breach of contract claims and Defendants' counterclaims; and Plaintiffs moved for judgment on partial findings on Defendants' counterclaims.   After hearing argument by counsel for both sides, and in light of Plaintiffs' representation that they were not seeking damages on their trademark, unfair competition, and trade dress claims, but were only seeking to enjoin Defendants' continued use of Plaintiffs' intellectual property, the Court denied Defendants' motion with respect to all claims and counterclaims.

The Court stated that while it would be issuing a written decision later, it intended to find as a factual matter that Defendants had committed fraud when they represented to Plaintiffs that Jayant Patel and Ulka Patel were the sole owners of SFH, that this was a material misrepresentation and had fraudulently induced Plaintiffs to enter into the franchise agreements.   The Court found that this fraud was a breach of the franchise agreements and under the cross-default provisions, a breach of the SDA and sublease as well.   The Court noted that these findings precluded recovery on Defendants' claims, other that the claim of promissory estoppel, and that thus, evidence of Defendants' alleged damages, other than on the theory of promissory estoppel would be irrelevant.

The Court set a schedule for the parties to file post-trial briefs; for Plaintiffs to file an application for attorney's fees; and for Defendants to respond to the request for fees.

With respect to Defendants' promissory estoppel counterclaim, the Court reserved ruling on liability, but held that in any event, there would be no basis for damages based on Defendants' conduct prior to July 14, 2011, the date of completion of the loss prevention report.   The parties agreed that they would submit by means of affidavits evidence of

Defendants' alleged damages from that date through August 24, 2011, the termination date.

On September 10, 2013, Defendants filed a post-trial brief (titled as a motion for directed verdict). In their motion, Defendants argue that the evidence failed to demonstrate that Jayant Patel and/or Ulka Patel intended to defraud Plaintiffs when they represented, on November 19, 2010, that they were the sole owners of SFH or made any misrepresentations of fact which was reasonably relied upon by Plaintiffs, and, therefore, the Court should enter judgment against Plaintiffs on Plaintiffs' breach of contract claims. Defendants argue further that Plaintiffs' trademark, unfair competition, and trade dress claims should be dismissed because Defendants have continued to operate the Florissant franchise with Plaintiffs' permission, and, in addition, Plaintiffs failed to present any evidence of damages relating to these counts.

Defendants argue that alternatively, they are entitled to a judgment and damages for breach of the Florissant Franchise Agreement and the SDA because Plaintiffs were aware of all the underlying relevant facts and the alleged fraud as of July 14, 2011, and nevertheless signed the Florissant Franchise Agreement on August 5, 2011. Defendants argue that they are therefore entitled to recover their "avoidable damages, costs and expenses for the period of July 14, 2011 to August 24, 2011 and the value of the franchise."

In their memorandum in support of their motion, Defendants argue that Plaintiffs' three claims under the Lanham Act and related state law should be dismissed under the "Waiver of Rights" provisions in the franchise agreements, because these claims include

claims for "multiple damages."  Defendants also maintain that Plaintiffs are not entitled to recover attorney's fees pursuant to the contract provisions for fees because Plaintiffs did not prove their fees at trial as an element of their contract claims; because Plaintiffs were not seeking to enforce the franchise agreements in this litigation, but rather to terminate them; and because Plaintiffs cannot both seek to invalidate the franchise agreements and enforce the attorney's fees provisions therein.  Further, according to Defendants, Plaintiffs cannot recover fees under the Lanham because this is not an "exceptional case."

On August 27, 2013, Defendants submitted the affidavit of their damages expert stating that from July 14 to August 24, 2011, SFH *paid* bills in the amount of approximately $306,000 for labor, materials, and equipment for the Florissant store; the affidavit does not indicate the costs *incurred* by Defendants related to the Florissant store during this time period.  (Doc. No. 189.)

Plaintiffs argue in response that Defendants' motion is procedurally improper.  In addition, both sides have submitted post-trial briefs, each arguing that they are entitled to judgment on the claims and counterclaims.  Defendants' basic argument is that they did not commit fraud, and that in any event, Plaintiffs' true reason for terminating the agreements was the cigarette forfeiture lawsuit.

## **CONCLUSIONS OF LAW**

The Court first rejects Plaintiffs' argument that Defendants' motion for judgment is procedurally improper.  The Court anticipated that Defendants might wish to file such a motion at the close of the evidence, as they have now done.  The Court, however, rejects

Defendants' substantive arguments contained in their motion and memorandum in support thereof. At this point in the proceedings, reliance on the Waiver of Rights provision in the franchise agreements is unavailing as a basis to dismiss Plaintiffs' claims or to order arbitration. The Court also rejects Defendants' argument that Plaintiffs cannot recover attorney's fees under the terms of the franchise agreements because Plaintiffs did not prove at trial the amount of fees to which they are entitled. The Court and both sides agreed that the amount of fees would be determined based upon affidavits and arguments submitted to the Court at the close of the other evidence.

Defendants' argument that Plaintiffs cannot recover attorney's fees because this litigation was not to *enforce* a provision of the franchise agreements but to *terminate* them is also without merit. The Court believes that it is clear that this litigation was to enforce the provisions giving Plaintiffs the right to terminate the agreements without a cure period in the case of fraud. *See Amelia Superette, Inc. v. Reliable Amusement Co., Inc.*, No. 2006 CA 1069, 2006 WL 3813723, at *2 (La. Ct. App. Dec. 28, 2006) (rejecting same argument as the one raised by Defendants here, as "the litigation was necessitated by a dispute between the parties as to the provisions dealing with termination of the agreement"); *Dunkin' Donuts Inc. v. Liu*, 79 F. App'x 543, 547 (3d Cir. 2003) (applying Massachusetts law to award attorney's fees, under a similar fee-shifting provision in a franchise agreement, to a franchisor that prevailed in litigation in which it sought to terminate the franchise agreement).

**<u>Plaintiffs' Breach of Contract Claims</u>**

To establish a breach of contract under Massachusetts law, a "plaintiff has the burden of proving the failure of the defaulting party to conform to one or more of the contract's material terms. A term is material when it involves an essential and inducing feature of the contract." *Edlow v. RBW, LLC*, No. 09-12133-RGS, 2010 WL 2034772, at *3 (D. Mass. May 21, 2010) (citation omitted). Here the breach of contract question is whether Defendants committed fraud as that term is used in the franchise agreements, justifying Plaintiffs' termination of the agreements without affording Defendants an opportunity to cure the breach.

Under Massachusetts law, to make out a claim of fraud "plaintiffs must establish that the defendants made a false representation of material fact, with knowledge of its falsity, for the purpose of inducing the plaintiffs to act on this representation, that the plaintiffs reasonably relied on the representation as true, and that they acted upon it to their damage." *Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc.*, 918 N.E.2d 36, 47 (Mass. 2009). Plaintiffs have established by a preponderance of the evidence that Defendants committed fraud.

The true ownership structure of the corporate franchisee was a material matter in Plaintiffs' decisions to enter into the franchise agreements with the corporate entity. Here the franchise relationship was tainted by fraud almost from its very inception. Jayant Patel and Ulka Patel's actions in misrepresenting the true ownership of SFH constituted fraud justifying immediate termination under the terms of the franchise

agreements.

In light of the cross-default provisions, Plaintiffs were also justified in terminating the SDA and the Washington store sublease. *See Dunkin' Donuts Franchised Rests. LLC v. D&D Donuts, Inc*., 566 F. Supp. 2d 1350, 1358-59 (M.D. Fla. 2008) (upholding a cross-default provision in a Dunkin' franchise agreement as a basis for termination of all of the defendants' franchise agreements). Accordingly, judgment will be granted to Plaintiffs on Counts I, II, and III of their amended complaint and on Counts II, III, and IV of Defendants' third amended counterclaim.

**Plaintiff's Trademark, Unfair Competition, and Trade Dress Claims**

In light of the Court's conclusion that Plaintiffs' termination of the Florissant Franchise Agreements was justified, the Plaintiffs are entitled to the prospective injunctive relief they seek: to enjoin Defendants from continued use of Plaintiffs' trademark and trade dress material.[4] *See S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 375 (3d Cir. 1992) ("The franchisor has the power to terminate the relationship where the terms of the franchise agreement are violated. Once a franchise is terminated, the franchisor has the right to enjoin [the] unauthorized use of its trademark under the Lanham Act."); *Downtowner/Passport Int'l Hotel Corp. v. Norlew, Inc.*, 841 F.2d 214, 219 (8th Cir. 1988) (stating "common sense compels the conclusion that a strong risk of consumer confusion arises when a terminated franchisee continues to use the former franchisor's trademarks"); *Sherwood Ford, Inc. v. Ford Motor Co.*, 875 F. Supp. 590, 594 (E.D. Mo. 1995) ("A

---

[4] Plaintiffs ask the Court to find that Defendants misused Plaintiffs' trademarks and trade dress from the date of termination, but Plaintiffs specifically allowed Defendants to continue operating the two franchises pending this litigation.

licensee's continued use of a trademark after the termination of the license agreement constitutes trademark infringement.").

**Defendants' Claim under the MFA**

Defendants' claim that Plaintiffs violated Missouri franchise law by failing to give proper notice of franchise termination, as required by Mo. Rev. Stat. § 407.405, fails. That section provides as follows:

> [n]o person who has granted a franchise to another person shall cancel or otherwise terminate any such franchise agreement without notifying such person of the . . . termination . . . in writing at least ninety days in advance of the . . . termination . . . except that when criminal misconduct [or] fraud . . . is the basis or grounds for . . . termination, the ninety days' notice shall not be required.

Based on this Court's findings of fact, the provision is, by its own terms, inapplicable because fraud was the basis for termination of the franchise agreements.

**Defendants' Claims for Wrongful Termination Sounding in Tort**

Counts VI and VII of Defendants' Third Amended Counterclaim are premised on the alleged wrongfulness of Plaintiffs' termination of the agreements at issue.  As such they are precluded by the Court's above Findings of Fact and Conclusions of Law.

**Defendants' Claim for Promissory Estoppel**

To prevail on a claim of promissory estoppel under Missouri law, a plaintiff must establish a promise made by the defendant; foreseeable, detrimental reliance on the promise by the plaintiff; and that an injustice would occur unless the promise is enforced. *Jamison Elec. L.L.C. v. Dave Orf, Inc.*, 404 S.W. 3d 896, 898 (Mo. Ct. App. 2013).  The doctrine of promissory estoppel should be applied with caution, sparingly, and only in

extreme cases to avoid unjust results." *Reitz v. Nationstar Mortg., LLC*, ___ F. Supp. 2d ___, 2013 WL 3282875, at *15 (E.D. Mo. June 27, 2013) (citations omitted) (applying Missouri law). Here the Court concludes that under the circumstances of this case, and especially given Defendants' fraud, as found above, and their continued operation of the Florissant store, awarding them relief for their expenditures in developing that store is not warranted.

Further, upon consideration of the evidence, the Court concludes that Plaintiffs were entitled to a reasonable time after completion of the investigation report by the Loss Prevention Department for the Legal Department to make a decision as to what action to take. In addition, Defendants have failed to submit proper evidence of any damages they sustained as a result of detrimental reliance on Plaintiff's alleged wrongful action in allowing Defendants to keep incurring development costs after the investigation report was completed. As noted above, Defendants have submitted evidence of costs paid, not incurred, during that period. It is clear from the evidence that these costs, for the most part, were incurred prior to the date the fraud was reasonably determined.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion for judgment is **DENIED**. (Doc. No. 191.)

**IT IS FURTHER ORDERED** that declaratory judgment is entered on behalf of Plaintiffs on all claims and counterclaims.

**IT IS FURTHER ORDERED** that Plaintiffs' motion to exclude the testimony of Defendants' damages expert is denied as moot.   (Doc. No. 149.)

The amount of attorney's fees to be awarded to Plaintiff will be determined by separate Order at which point a final Judgment will be entered in the case.

*Audrey G. Fleissig*
_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 31st day of December, 2013.