UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DUNKIN= DONUTS FRANCHISING LLC, et al., | ) ) ) | |
| Plaintiffs / Counterclaim Defendants, | ) ) | |
| vs. | ) ) | Case No. 4:11CV01484 AGF |
| SAI FOOD HOSPITALITY, LLC, JAYANT PATEL, ULKA PATEL, and KAMLESH PATEL, | ) ) ) ) | |
| Defendants / Counterclaim Plaintiffs, | ) ) | |
| DUNKIN' BRANDS GROUP INC. and DUNKIN' BRANDS INC., | ) ) ) | |
| Counterclaim Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiffs' motion for attorney's fees, costs, and

expenses (Doc. No. 213), pursuant to their franchise agreements with Defendants and the

personal guarantees of the three individual Defendants executed in connection with those

contracts.  For the reasons set forth below, Plaintiffs' motion shall be granted in the full

amount of $757,573.96.

## BACKGROUND

This action arose from two franchise agreements entered into between Plaintiffs

and Defendant Sai Food Hospitality, LLC ("Sai"), in November 2010 and August 2011,

for the development and operation by Sai, as Franchisee, of stores in Washington,

Missouri, and Florissant, Missouri, respectively, using Plaintiffs' proprietary property. The agreements provided that they were to be governed by Massachusetts law.  Section 14.4.4 of the agreements provided as follows:  "You [Franchisee] will pay to us [Plaintiffs] all costs and expenses, including reasonable payroll and travel expenses for our employees, and reasonable investigation and attorneys' fees, incurred by us in enforcing any provisions of this Agreement."  Section 14.6 provided:  "If you [Franchisee] commit a default [including commission of a fraud upon us] . . .  we may terminate this Agreement."

Each agreement included a personal guarantee guaranteeing, jointly and severally, "the performance of all the Franchisee's . . . obligations under this Franchise Agreement . . ." and agreeing that "the Franchise Agreement shall be binding upon each of them personally."  The personal guarantee for the Washington store agreement was signed by Defendants Ulka Patel and Jayant Patel and a third individual (Doc. Nos. 92-3); the personal guarantee for the Florissant store agreement was signed by all three individual Defendants (Doc. No. 92-4 at 21).

On August 24, 2011, Plaintiff terminated the agreements on the grounds of fraud and violation of statutory law in falsely representing in the fall of 2010 the true ownership of Defendant Sai Foods Hospitality, LLC.  Defendants contested the termination, and on August 25, 2011, Plaintiffs initiated this lawsuit for declaratory judgment that they had the right to terminate the franchise agreements.  Plaintiffs also asserted claims under the Lanham Act and applicable state law for trademark infringement and unfair competition.  In addition to declaratory relief, Plaintiffs sought

injunctive relief enjoining Defendants from further using Plaintiffs' intellectual property, actual damages, and attorney's fees and costs under the terms of the franchise agreements. Defendants filed a counterclaim in several counts, all essentially based upon their assertion that the franchise agreements were wrongfully terminated.

A bench trial commenced on August 18, 2013. On the fifth day of trial, after Defendants informed the Court that they had called all of their witnesses other than their damages expert, the Court advised the parties that based on the evidence it intended to find, as a factual matter, that Defendants had committed fraud and had fraudulently induced the franchise agreements, which would preclude recovery on Defendants' counterclaims, other than possibly with respect to one counterclaim that was based on the development of the Florissant store. As a result, Defendants' evidence of its damages other than with respect to that counterclaim would be irrelevant. The parties agreed to submit damages evidence by affidavit, in part to accommodate Defendants' need to reformulate its damages evidence. Defendants were given up to August 28, 2013, to file their evidence of damages on the one counterclaim in question. The Court afforded the parties time in which to file post-trial briefs, to be due two weeks after the trial transcript was filed, and the parties agreed that Plaintiffs would file their application for fees, cost, and expenses (hereinafter, motion for fees) seven days before post-trial briefs were due, and Defendants would respond. No objections to proceeding in this manner were voiced.

On August 28, 2013, Defendants filed a new affidavit of its damages expert, Kevin Summers, with regard to the Florissant store. The trial transcript was filed on November 1, 2013. After obtaining an extension of time to file the motion for fees, Plaintiffs filed

3

its motion for fees on November 15, 2013. Both sides filed post-trial briefs. Among Defendants' arguments in their post-trial briefing was that Plaintiffs were not entitled to recover fees pursuant to the contract provisions for such fees because (1) Plaintiffs did not prove their fees at trial as an element of their contract claims; (2) Plaintiffs were not seeking "to enforce" the franchise agreements in this litigation, but rather to terminate them; and (3) Plaintiffs cannot seek both to invalidate the franchise agreements and enforce the fees provisions therein.

In their motion for fees, Plaintiffs seek a total of $757,573.96 incurred as of November 14, 2013. This consists of $636.373.50 for fees billed by the firm in Washington, D.C., that represents Plaintiffs; $103,685.50 in costs (including fees and costs in the amount of $6,839.19 charged to the D.C. firm by local counsel, and expert fees); and $17,514.96 in travel expenses that Plaintiffs reimbursed to 11 of its employees who were called, some by Defendants, as witnesses at the trial. Plaintiffs' application is supported by invoices, the sworn certification of their lead counsel (David Worthen) attesting to their counsels' experience, and by contemporaneously-recorded time records that describe the date, activity, and time spent on each litigation task, and by whom the tasks were performed.

These records show that the attorneys of the D.C. law firm billed Plaintiffs at hourly rates ranging from $220 to $375 in 2011; $235 to $400 in 2012; and $255 to $400 in 2013. Of the total of approximately 1,800 hours of attorney time, 978.10 were attributed to the firm's primary associate on the case at $230-$255 per hour; and 616.50 were attributed to Worthen at $355-$375 per hour. Paralegals were billed at rates from

$145 to $180 per hour. The total hours these attorneys and paralegals have expended

through November 14, 2013, is 2,266 hours. Plaintiffs were awarded a discount in the

amount of $15,380 by the D.C. firm based on their long relationship with counsel. Local

counsel expended 24.2 hours billed at approximately $280 per hour.

Plaintiffs contend that the hourly rates charged are at the low end of the reasonable

range. This contention is supported by Worthen's sworn certification attesting to such,

and by the "Laffey Matrix," a copy of which has been submitted by Plaintiffs. This

matrix purports to show the average hourly rates for attorneys of varying experience

levels in the D.C. area. In addition, Plaintiffs note that D.C. counsel did not bill for time

spent for travel to and from St. Louis, and that they are not seeking fees for amounts

incurred after November 14, 2013.

In response to Plaintiffs' motion for fees, Defendants first reassert their arguments

noted above as to why none should be awarded. Defendants also assert that Plaintiffs'

evidence supporting their fees is barred by the advocate-witness and expert witnesses

rules; that the Laffey Matrix constitutes inadmissible hearsay; that even if the matrix is

admissible, Plaintiffs' requested fees are still unreasonable; that the claim for fees based

on Defendants' personal guarantees should be denied because Plaintiffs did not plead or

present any claims regarding the personal guarantees at trial, the guarantees do not apply

to this issue, and equity bars the enforcement of the personal guarantee with respect to the

Florissant franchise agreement.

Defendants further respond that there should be a new trial on the issue of fees,

that there are a "myriad of errors present throughout the Motion for Fees," and that "with

proper discovery," Defendants "may challenge not only the reasonableness, but also the rates charged and the amount of hours expended." They attach the affidavit of David Ault, a professor of economics, stating that after adjusting the Laffey Matrix to account for the consumer price index and lower cost of living in St. Louis, "the reasonable estimates of the fees requested ($757,753.96) fall in the range, $508,426.36 - $703,551.46." This does not include the $17,514.96 for travel expenses or the $6,839.19 attributed to local counsel. (Doc. No. 221-1.)

Plaintiffs reply that Ault was never identified as an expert and his resume does not indicate expertise in the area of fees. Furthermore, Plaintiffs point out that they only used the Laffey Index as a point of reference, not as a method of calculation, and Ault does not consider the reasonableness of the actual rates charged by Plaintiffs' attorneys or how those rates compare to the average hourly fee charged for similar legal services in St. Louis. They note that their fee petition establishes that the most junior associate involved in the litigation (with the lowest billing rate) contributed the highest number of hours.

By December 31, 2013, Plaintiffs' application for fees and costs was fully briefed. On that same day, the Court entered its written findings of fact and conclusions of law, and entered judgment on behalf of Plaintiffs on all claims and counterclaims. The Court rejected Defendants' arguments that Plaintiffs were not entitled to attorney's fees, and stated that the amount of fees to be awarded to Plaintiff would be determined by separate Order, at which point a final judgment would be entered. (Doc. No. 230.)

The Court thereafter permitted Defendants to file a surreply to Plaintiffs' request for fees, expenses, and costs. In their surreply, Defendants urge the Court not to enter an

order without allowing "discovery and further pleadings." They maintain that Ault is a

qualified expert. Finally, after Plaintiffs filed a supplement to their request showing in

more detail, as ordered by the Court, how the sum totals for attorney's fees in their

motion were arrived out, Defendants filed a motion to strike, as non-responsive,

Plaintiffs' supplement. In this motion, Defendants challenge for the first time specific

amounts claimed by Plaintiffs, as follows:

> (1) Costs/expenses of $33,938.84 for expert Robert Taylor, who,
> Defendants assert, only prepared a counter-declaration addressing
> Summers' post-trial expert report on damages that Defendants sustained in
> connection with development of the Florissant store.

> (2) Costs of the mediation directed by the Court ($11,834.72).

> (3) Periodic charges for online research (totaling $17,370.40), asserting that
> such charges "are normally factored into the hourly rates to recover
> overhead charges, but double counting seems to be the order of the day."

> (4) "The cost bill does not identify with specificity the deposition charges
> and/or the related travel expenses, and for this reason, these charges remain
> unclear."

> (5) The nature of the discount for fees remains unclear and seems "to be
> applied in an arbitrary manner unrelated to the amounts being billed."

Plaintiffs respond that it is too late for Defendants to start challenging specific

items, when they did not do so in their response and surreply, and that in any event, all

the invoices Plaintiffs have submitted with their fee request show that all tasks and rates

were reasonable.

## DISCUSSION

The Court first rejects Defendants' arguments that Plaintiffs are not entitled to any

fees, costs, and expenses that Plaintiffs raised previously, for the same reasons, and based

on the same authority, that the Court set forth in its written decision of December 31, 2013. The Court notes that the procedure followed here was not only assented to by Defendants when the Court set the schedule for submission of the issue,[1] but is also a procedure commonly followed by this and other courts. *See, e.g., Dunkin' Donuts Inc. v. Guang Chyi Liu*, No. CIV.A. 99–3344, 2002 WL 31375509, at *2 & n.4 (E.D. Pa. Oct. 17, 2002) (listing cases). Furthermore, Defendants must prove that they were prejudiced in order to deprive Plaintiffs of their fees due to the procedure followed here, or to warrant a new trial on the issue of damages. *See Malin Int'l Ship Repair & Drydock, Inc. v. Veolia Es Special Servs., Inc.*, 369 F. App'x 553, 555-56 (5th Cir. 2010) (upholding the district court's bifurcation, in a bench-tried contract case, of the issues of entitlement to fees and quantum of fees); *O'Dell v. Hercules Inc.,* 904 F.2d 1194, 1202 (8th Cir. 1990). Evidence of prejudice is lacking. As indicated above, after Plaintiffs filed their motion for fees, Defendants were given ample opportunity to review and challenge the quantum of fees claimed. The Court also rejects Defendants other argument that no reimbursement is warranted.

With respect to the amount of reimbursement to which Plaintiffs are entitled, in a diversity case such as this, state law governs not only the actual awarding of attorney's fees but also the method of determining those fees. *Gonzalez v. S. Wine & Spirits of Am., Inc.*, ___ F. App'x ___, 2014 WL 636807, at *1 (9th Cir. 2014); *N. Heel Corp. v. Compo*

---

[1]  The Court notes that Defendants, in their oral motion for a directed verdict at the close of Plaintiffs' case, made no argument whatsoever regarding Plaintiffs' failure to submit evidence of their attorneys' fees. Had Defendants asserted such an argument, the Court could have re-opened the case to receive such evidence.

*Indus., Inc.*, 851 F.2d 456, 475 (1st Cir. 1988). In *Mulhern v. Roach*, 494 N.E.2d 1327

(Mass. 1986), the Massachusetts Supreme Court held as follows:

> In determining what is a fair and reasonable charge to be made by an
> attorney for his or her services, many considerations are pertinent,
> including the ability and reputation of the attorney, the demand for his
> services by others, the amount and importance of the matter involved, the
> time spent, the prices usually charged for similar services by other attorneys
> in the same neighborhood, the amount of money or the value of the
> property affected by controversy, and the results secured. Not one of the
> factors is necessarily decisive. The weight to be given to each of them will
> vary according to the nature of the services rendered in the particular
> instance under examination.

*Id*. at 1329 (citation omitted).

Here, the Court has carefully reviewed Plaintiffs' submissions, and concludes that

the hours and rates claimed are reasonable for this case.[2] Defendants were aware from

the filing of the complaint that Plaintiffs would be seeking fees, costs, and expenses

under the terms of the franchise agreements if Plaintiffs prevailed in the action, and could

have obtained discovery on the matter. While the amounts sought by Plaintiffs are

considerable, the Court sees no basis for reducing them. With regard to the hourly rates,

as Plaintiffs state, the Laffey Matrix was submitted just as a point of reference. Ault's

affidavit, even if the Court were to accept him as an expert on the issue of fees, provides

no evidence that the hourly rates charged by Plaintiffs' D.C. counsel were not reasonable,

when considering all the relevant factors. In addition Ault does not explain why he

subtracted out only part of the bill for costs. In addition, the wide gap between Ault's

upper and lower amount of fees he deems reasonable, gives the Court pause. Further, the

_____

[2]    The Court would arrive at the same conclusion under the lodestar method for
assessing reasonable fees.

bulk of the work was done by associates at lower rates, and counsel appear to have used paralegals at even lower rates where appropriate.

The Court further notes that Plaintiffs have established that their counsel had not only years of experience commensurate with their billing rates, but also special expertise in franchise law, and years of experience with Dunkin' Donuts. Defendants have not challenged these assertions in any respect. This specialized experience both in the substantive area and with the client, permitted counsel to address the myriad issues presented in the case more efficiently. The Court finds that this experience was reflected in motions and other filings that were well drafted and well supported. Further, Plaintiffs' counsel performed admirably at trial, presenting the evidence efficiently and effectively. And, of course, they were successful at trial.

Though considerable, the Court also finds the number of hours billed to be reasonable. Here counsel became involved well before suit was filed, as they were consulted after the loss prevention department completed its investigation, in advising Plaintiffs with regard to the decision to terminate, and participated in drafting the termination letter and early discussions with Defendants and their attorney. After the trial, Defendants requested leave to sell one of the stores, even though the Court had already determined that the termination was proper based on fraudulent inducement. Plaintiffs opposed that request, and the request was denied. These actions by Plaintiffs, before and after the suit itself, were reasonable and necessary to Plaintiffs' efforts to enforce the provisions of the various agreements regarding termination. And Plaintiffs are not seeking fees incurred after November 14, 2013, although counsel continue to

provide services in connection with opposing Defendants' written motion for a directed

verdict, and responding to Defendants' numerous filings in opposition to the fee request,

including both a sur-reply and motion to strike.

Moreover, Defendants chose, as was their right, to expand the lawsuit by taking

positions and filing pleadings which served to increase the fees, expenses and costs

incurred by Plaintiffs. For example, in their counterclaim, Defendants asserted

numerous grounds, including claims for violation for the Sherman and Clayton Acts,

which counts were dismissed on Plaintiffs' motion. Further, Defendants sought a jury

trial, lost profits, punitive damages and other relief, which Plaintiffs moved to strike and

the Court found were precluded by the terms of the parties' agreements. Defendants also

amended their counterclaims at least three times, each time after Plaintiffs had filed

motions to dismiss, and Defendants expanded their pleadings to include as parties other

parent companies, which parties the Court ultimately dismissed, again on motion of the

Plaintiffs. The proper measure of Defendants' claimed damages also posed difficult

issues, and potentially differed based upon the store or agreement involved. Defendants'

expert's calculations ultimately were not consistent with the proffered damage theory,

prompting the Court to grant Plaintiffs' motion to strike a significant portion of the

expert's report.

The Court further notes that the amount and importance of the matters involved

were significant. As Plaintiffs note, they were seeking to protect the integrity of their

brand, and at issue in the litigation was not only Defendants' ability to operate the

Washington and Florissant stores, but also Defendants' ability to continue under the Store

Development Agreement between the parties to develop other stores in the designated geographic area. Defendants' counterclaims for damages for wrongful termination were correspondingly significant, claiming as much as $11 million in damages at times. Thus, although the fee amount is admittedly quite substantial, so were the matters at stake in the litigation.

The Court finds that none of Defendants' specific challenges have merit. Taylor was Plaintiffs' damages expert throughout the litigation, not just in response to Summer's post-trial report. (Doc. No. 214-3 at 185-193.) There is no reason to deduct Plaintiffs' mediation costs, there is no hint of double charging or duplication of efforts by Plaintiffs, and the deductions awarded by Plaintiffs' counsel to Plaintiffs were properly passed on to Defendants. Plaintiffs' costs for deposition transcripts are itemized and supported by contemporaneous invoices to Plaintiffs. Although Plaintiffs' records do not specify whose depositions were involved (just as their costs for printing do not specify just what was printed), the Court does not believe this is necessary, especially as the majority of the depositions were taken by Defendants.

With respect to the personal guarantees, the Court concludes that their language is clear that they cover Defendants obligations with respect to Section 14.4.4 of the franchise agreements, and that Plaintiffs are entitled to enforce them.

## <u>CONCLUSION</u>

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion to strike Plaintiffs' supplemental submission requested by the Court is **DENIED**. (Doc. No. 240.)

**IT IS HEREBY ORDERED** that Plaintiffs' motion for attorney's fees, costs, and expenses is **GRANTED** in the amount of $757,573.96, for which all Defendants are jointly and severally liable to Plaintiffs.  (Doc. No. 213.)

All claims against all parties having been resolved, a separate final Judgment shall accompany this Memorandum and Order

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 16th day of May, 2014.